## McManus *et al. versus* The Philadelphia and Reading Railroad Company.

The Act of March 24th 1865 authorized any railroad company to issue such additional shares of stock as might be necessary to equip their road, &c., the stock to be of the same value and stand on the same footing as the original stock.   By the Act of April 10th 1867 the directors of any railroad company authorized to increase its stock, when the increase shall have been authorized by the stockholders, may determine in what manner the same may be subscribed and sold, the amounts of the instalments and the manner of their payment.   The stockholders of the East Pennsylvania Railroad resolved that the directors should have power to increase the stock, and dispose of the same as they may deem advisable.   The directors accepted a subscription for an additional issue of stock for the purpose of extending their road to the Delaware, and stipulated that interest at the rate of 6 per cent. upon the instalments on the stock should be paid until the completion of the extension, with a proviso that the new stockholders should not participate in any of the profits theretofore made.   *Held*, that such subscription was unauthorized by the aforesaid acts and the resolution of the stockholders.

June 1st 1868.   Before THOMPSON, C. J, STRONG, READ, AGNEW and SHARSWOOD, JJ.

Appeal from the court at Nisi Prius: In Equity.   To July Term 1868.

On the 11th of January 1868 the Philadelphia and Reading Railroad Company filed a bill against the East Pennsylvania Railroad Company, Edward M. Clymer, president of said company, Horatio Trexler, Charles H. Hunter, David McKnight, John McManus, G. Dawson Coleman and Edward Brooke.

The bill alleged :—

1. That the East Pennsylvania Railroad Company was the owner of a railroad from Reading to Allentown.

2, 3 and 4. That the stock is divided into 13,092 shares at $50 per share, and the stock is full paid and that the plaintiffs hold 7317 shares.

5. That at the annual election in January 1867, E. M. Clymer was elected president and Horatio Trexler, John S. Richards, A. E. Borie, Robert B. Cabeen, Charles H. Hunter, David McKnight, Charles E. Smith and F. B. Gowen were elected directors of said company.

6. That the plaintiffs gave notice to Clymer that at the election in January 1868 they desired to elect Charles E. Smith president of said railroad company in his stead.

7. That Clymer, Trexler, McKnight and Hunter, acting as directors of the company, on the 11th of January, instant (1868), held a pretended· special meeting of directors of said company, and at that meeting without authority and in violation of law, ordered that 20,000 shares of additional stock in said company should be issued to John McManus, G. Dawson Coleman and Edward Brooke, who should pay $1 per share for such stock.

[McManus v. Philadelphia and Reading Railroad Co.]

8. That no notice of this meeting was given to Borie, Smith, Cabeen or Gowen, directors of the company, and they had no knowledge of the meeting.

9. That the object of the said Clymer, Trexler, Hunter and McKnight in issuing said stock, was to enable the holders to vote in favor of retaining Clymer as president at the annual election, to take place on the 13th instant, and prevent the bonâ fide stockholders from exercising control in the affairs of the company.

10. That the said 20,000 shares of stock have been issued to McManus, Coleman and Brooke, in violation of law, and that the parties, unless restrained, will vote at the said election on the 13th instant, and thus fraudulently secure the control of the property of the bonâ fide stockholders of the company.

11. That no quorum of the directors voted in favor of the issue of the stock, and that the whole proceedings were without authority.

The bill prayed that McManus, Coleman and Brooke be restrained from voting by themselves or proxies at the coming election, and that the railroad company and the directors, &c., be restrained from permitting McManus, Coleman and Brooke to vote on the stock; that the issue of the stock be declared illegal, and the certificates be decreed to be delivered up and cancelled; and for general relief.

The affidavit of Charles E. Smith, president of plaintiffs, was filed the same day with the bill, stating the incorporation of the East Pennsylvania Railroad Company, and referring to the act for its incorporation and the supplements; also in substance the facts alleged in the bill; he annexed to his affidavit minutes of the meeting of the directors held in January then instant. There were other matters alleged in the affidavit not material to understanding the decision of the Supreme Court.

A special injunction according to the prayer of the bill was directed to issue the same day by Judge Strong, and the 16th fixed for hearing the motion for preliminary injunction. An examiner was appointed, and much testimony taken. On the 19th of February 1868, it was ordered that the special injunction remain till further order of the court. From this order the defendants appealed, and assigned the decreeing the injunction for error.

The Act of the 9th of March 1856, authorized the incorporation of the Reading and Lehigh Railroad Company to make a railroad from a point at or near the junction of the Lebanon Valley Railroad with the Philadelphia and Reading Railroad in Reading, to any point on the Lehigh Valley Railroad in Lehigh or Northampton county, subject to the General Railroad Law of 1849; the capital stock to be $500,000, with authority "from time to time, by vote of the stockholders, to increase their capital stock, if it should be deemed expedient, to an amount sufficient to

complete said road, and to carry out the true intent and meaning of this act." The company were authorized "to connect their road with any railroad which is now or may be hereafter constructed, at either end of said route." The number of the directors to be eight, of whom five should be a quorum; by the Act of March 18th 1857, the number of directors was increased to twelve. By Act of Assembly of April 21st, in the same year, the name of the company was changed to The East Pennsylvania Railroad Company. The Act of March 13th 1862 fixed a quorum of the board at five directors, or four directors and the president.

At a meeting of the stockholders held January 12th 1863, it was

" Resolved, That the recommendation of the directors to increase the capital stock $200,000 (four thousand shares), meets with the approbation of this meeting, and the stockholders here present representing, as they do, five thousand and seventy-two shares—being a majority of the capital stock or shares—deeming it expedient to make such increase in accordance with and as is provided in the act of incorporation, do hereby vote and declare that the capital stock shall be increased $200,000, (four thousand shares), and be entered upon the proper books of the company by the treasurer, and disposed of as the board of directors shall order and determine."

The Act of April 15th 1863, authorized the East Pennsylvania Railroad Company to extend their road to the Delaware river, and construct a bridge over the same in conjunction with any other railroad of the state of New Jersey.

At a meeting of the stockholders, January 11th 1864, it was resolved " That the action of the board of directors had upon the 21st of April 1863, accepting the Act of Assembly approved April 15th 1863, is hereby approved and confirmed, and the president and directors are hereby authorized and empowered to carry out the true intent and meaning thereof, and from time to time to take such steps as they may deem proper, in regard to the rights and privileges in said supplement granted, even should the same require the creation of a second mortgage, or the issue of additional stock."

On the 9th of January 1865, the stockholders resolved, " That in all matters pertaining to the extension of the road to the Delaware river, and bridging the same, as well as to the location and construction of branch roads, and all other affairs of the company, the president and directors are hereby authorized and empowered to take such action in regard to the same, from time to time, as they may deem necessary or expedient; and shall have full power to increase the capital stock and dispose of the same, and borrow money upon bond and mortgage, or otherwise, for the purposes aforesaid, as they may deem advisable.

" That the powers and authorities heretofore conferred upon and granted to the president and directors, be and the same are hereby continued."

The Act of March 15th 1865, Pamph. L. 43, Purd. 1408, enacted that any company incorporated under any law of this commonwealth, and having authority to construct a railroad within the same, under the provisions of the General Railroad Act of the 19th of February 1849, shall be authorized, from time to time, to receive subscriptions for and issue such additional shares of the capital stock as may be necessary to construct and fully equip, &c., such railroad ; the par value of which additional shares shall be the same as that of the then existing shares of said company ; and the stock so issued shall stand in all respects upon the footing of the original stock thereof.

The stockholders January, 8th 1866, resolved " that the powers and authorities heretofore conferred upon and granted to the president and directors be and the same are hereby continued."

A precisely similar resolution of the stockholders was adopted January 14th 1867.

By the Act of April 10th 1867, Pamph. L. 61, it was enacted " that in all cases where any railroad company is authorized to increase its capital stock, and such increase has been or may be authorized by the stockholders, it shall and may be lawful for the president and directors to determine by resolution, in what manner and by whom the same shall be subscribed, or to whom the same shall be issued or sold, and the amounts of the several instalments to be paid thereon, and the times and manner in which the same shall be paid."

A regular stated meeting of the directors was held January 2d 1868, which, after appointing judges for the annual election and transacting other business relative to that election, was adjourned to meet on the 11th of January 1868.

The board met January 11th 1868, pursuant to adjournment. There were present, Edward M. Clymer, president; David McKnight, John S. Richards, Horatio Trexler and Charles H. Hunter.

At this meeting a preamble declaring the necessity for an increase of the capital stock of the company, and that John McManus, Edward Brooke and G. Dawson Coleman had made propositions to subscribe for 20,908 shares of the stock of the company, was adopted, and also the following resolutions :—

" That the stock of this company be and the same is hereby increased to the extent of twenty thousand shares in addition to the number of shares which now constitute the capital stock of the company.

" That the president be and he is hereby authorized to accept said several propositions and to receive said several subscriptions,

and on the payment of one dollar per share for every share of stock so subscribed (which sum is* all that will at present be required to prosecute the work as now progressing), to issue to each of the said subscribers a receipt or certificate therefor under the seal of the company; and the other instalments thereon shall be paid in such manner and in such amounts as the president and directors may require : Provided, That no instalment greater than five dollars per share shall be called for in any period of thirty days, of which at least thirty days' notice shall be given, and that interest, at the rate of six per cent., shall be paid semi-annually, on the first day of January and July, on all instalments so paid in, until the completion of said extension : Provided, however, That no subscribers to, or subsequent holders of the stock so subscribed shall participate in any of the profits heretofore earned by the company, or in any dividend or dividends of said profits, which may be hereafter made in cash or in stock, or otherwise howsoever."

The subscription of McManus, Brooke and Coleman was as follows :—

" We hereby subscribe for the number of shares of the capital stock of the East Pennsylvania Railroad Company set opposite our respective names, and we agree to pay therefor according to the terms and conditions set forth in the resolutions adopted by the board of directors of the said company, on the 11th day of January, A. D. 1868.

" Witness our hands, this 11th day of January 1868."

This was signed by the subscribers, with the number of shares, amounting in all to 20,908.

At the stockholders' meeting, held January 13th 1868, the action of the board of directors in issuing the new stock was disapproved.

An election was held, and president and directors elected, the stockholders holding the new issue of stock not voting.

The foregoing, with the bill, contain all the facts necessary to be stated for an understanding of the case as decided by the Supreme Court.

*W. A. Porter* and *Brewster*, Attorney-General, (with whom was *T. Cuyler*), for McManus, Coleman and Brooke, appellants.

*F. B. Gowen* and *G. W. Biddle*, for the Philadelphia and Reading Railroad Company.

*J. E. Gowen*, for the East Pennsylvania Railroad Company.

The opinion of the court was delivered, July 2d 1868, by SHARSWOOD, J.—By an Act of Assembly, passed March 9th

1856 (Pamph. L. 295), the Reading and Lehigh Railroad Company was incorporated to construct a railroad from Reading to some point on the railroad of the Lehigh Valley Railroad Company, either in the county of Lehigh or Northampton, and was made subject to all the provisions and restrictions prescribed by the General Railroad Law—the act entitled "An Act regulating railroads," approved February 19th 1849. By the 2d section the capital stock was fixed at $500,000; and the company was authorized from time to time, by vote of the stockholders, to increase it, if it should be deemed expedient, in order to complete the road. By an Act of April 21st 1857 (Pamph. L. 368), the name of the corporation was changed to that of "East Pennsylvania Railroad Company"; and by another Act of April 15th 1863 (Pamph. L. 462), they were authorized to extend their road to the river Delaware, and it was provided that in making the said extension they should be entitled to all the privileges and be subject to all the provisions and restrictions of their original charter.

By an Act of Assembly, entitled "A supplement to the general law relating to railroad companies," and which was approved March 24th 1865 (Pamph. L. 43), it was declared that any company having authority to construct a railroad under the General Railroad Law, should be authorized "from time to time to receive subscriptions for, and issue such additional shares of capital stock as may be necessary to construct and fully equip with suitable locomotive engines and rolling-stock, such railroad or railroads; the par value of which additional shares shall be the same as that of the then existing shares of said company, and the stock so issued shall stand, in all respects, upon the footing of the original stock thereof"; and by another Act of April 10th 1867 (Pamph. L. 61), it is provided "that in all cases where any railroad company is authorized to increase its capital stock, and such increase has been or may be authorized by the stockholders, it shall and may be lawful for the president and directors to determine, by resolution, in what manner and by whom the same shall be subscribed or to whom the same shall be issued or sold, and the amounts of the several instalments to be paid thereon, and the times and manner in which the same shall be paid."

At the annual meeting of the stockholders of the East Pennsylvania Railroad Company, held January 9th 1865, a resolution was adopted giving to the president and directors "full power to increase the capital stock and dispose of the same" for the purposes of the extension of the road to the river Delaware, and bridging the same, as well as of the location and construction of branch roads, and all other affairs of the company. At the annual meetings of the stockholders of 1866 and 1867 the powers and authorities theretofore granted to the president and directors were continued. Under the legislative authority thus conferred and this

[McManus *v.* Philadelphia and Reading Railroad Co.]

course of proceedings by the stockholders, we have to determine whether the stock issued in pursuance of the preamble and resolutions of the board of directors, at an adjourned meeting held January 11th 1865, to the defendants McManus, Coleman and Brooke constituted them lawful stockholders of the East Pennsylvania Railroad Company so as to entitle them as such to vote at the election for directors held in pursuance of the charter on the 13th day of January 1868. If they were not, it cannot be and has not been denied that the plaintiffs were entitled to the preliminary injunction, which they prayed for and obtained at Nisi Prius, to restrain them from voting.

This is a mere question of law—of construction of the Acts of Assembly. The arguments by the counsel in the case took a much wider range, in which it is neither our duty nor inclination to follow them. With the wisdom of legislation a court of equity has no more to do than a court of law. It would be to usurp the province of another department of the government. The legislature have seen fit by the Act of April 23d 1861 (Pamph. L. 410), to allow any railroad company to purchase and hold the stock of any other railroad company, without limit, and it follows that by becoming the owners of a majority of the stock one railroad company may legitimately control the operations of another. Whether a court of equity will not interpose in this state under its broad powers " for the supervision and control of corporations " to prevent such control from being exercised for the benefit of the controlling body in utter disregard of the rights and interests of the other stockholders, is a question which does not arise in this case. The Philadelphia and Reading Railroad Company are the lawful owners of seven thousand three hundred and seventeen shares of the stock of the East Pennsylvania Railroad Company. They stand before this court with as strong an equity to call upon it to protect them in their rights as stockholders, as if they were that many individual stockholders. If a court of equity can stretch out the strong arm of injunction to prevent regulations and management looking solely to the benefit of the Philadelphia and Reading Railroad Company, to the injury and destruction of the East Pennsylvania Railroad Company, that object cannot be effected by suffering the minority of the stockholders to elect the board of directors and thus usurp the entire control and management themselves.

Many points of interest and importance were raised and discussed with great ability on the oral and in the printed arguments which we pass over in silence as unnecessary to the decision.

We are unanimously of the opinion that the terms of subscription as prescribed by the resolution of the directors of January 11th 1868, for the additional stock subscribed for, and certificates for which were issued to the three defendants McManus,

[McManus *v.* Philadelphia and Reading Railroad Co.]

Brooke and Coleman, were unauthorized by the resolution of the stockholders of January 9th 1865, or by the Acts of 1865 and 1867. One of the terms was "that interest at the rate of six per cent. shall be paid semi-annually, on the first day of January and July, on all instalments paid, until the completion of the extension." According to this stipulation, the holder of a share of the new stock, besides his proportion of the annual profits upon his instalments paid up, will be entitled to receive an additional sum as interest. Thus if the dividend should be ten per cent. on the capital he would receive sixteen per cent., while the original stockholder would receive only ten per cent.; and this difference is to continue not merely to the period when the full amount shall be paid in on the new stock, but "until the completion of said extension;" making it evidently the interest of the new stockholders, holding a majority of the stock, that it should never be fully completed. It was urged, indeed, on the part of the plaintiffs, that the profits of the road must be divided equally to all the shares of stock, and not by a percentage upon the amounts paid in. That, however, would be too gross an inequality and monstrous an injustice to be ever tolerated in a court of law or equity. But upon the only fair and reasonable construction which can be given to the terms of the charter and of the subscription, it cannot be denied that the holders of the new stock have a real and valuable advantage or preference over the old. The stock so issued does not stand, as the Act of 1865 contemplates, in all respects upon the footing of the original stock. The resolution of the stockholders authorizing an increase of the capital stock evidently intended no such preference, and the Act of 1867, in conferring on the president and directors power to determine "in what manner and by whom the same shall be subscribed," certainly did not authorize them under such a general resolution of the stockholders to create a preferred stock.

The learned counsel for the defendants felt the force of this objection, and producing the certificates of stock issued to his clients, offered, as he stated, by their authority, to endorse upon them a waiver of this term of the subscription. But this cannot avail. The question presented on this appeal is whether the subscribers were entitled to vote at the election of January 13th 1868. If the stock was unlawful then, it would not help them even if it could now be legalized by such a waiver. The decree awarding the preliminary injunction was right and must be affirmed. We are not now called on to make a final decree, or to grant or refuse the prayer of the bill that the said issue of twenty thousand shares of stock may be decreed to be illegal, null and void, and that the certificates thereof may be delivered up and cancelled.

Decree affirmed.