## Sneathen et al. *versus* Grubbs et al.

G. & Co. agreed in writing that they would deliver to S. & W. at their landing in Pittsburgh two barges of coal, "price to be 4¼ cents per bushel, Cincinnati or Louisville guage. Terms, cash, when delivered in Pittsburgh free of all charges." S. & W. furnished the barges, and the coal was placed therein by G. & Co., but owing to the low water in the river they could not be taken to Pittsburgh. While thus lying at the works the coal was levied upon by creditors of G. & Co. S. & W. brought an action of replevin. *Held,* that as the delivery of the coal had not taken place and the terms of the contract of sale had not been performed, no title to the coal passed which could be enforced in replevin by the purchasers.

November 18th 1878. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, and TRUNKEY, JJ. WOODWARD, J., absent.

[Sneathen v. Grubbs.]

Error to the Court of Common Pleas of *Washington county*: Of October and November Term 1878, No. 141.

Replevin by J. B. Sneathen and B. F. Wilson, partners, trading as J. B. Sneathen & Co., against J. W. Grubbs & Co.

The facts, in substance, were these: In August 1875, the defendants made with plaintiffs the following agreement in writing:

"Pittsburgh, August 10th 1875.

"We have this day agreed to load for Sneathen & Wilson, and deliver in their landing at the Point, two (2) barges coal from our mines near Greenfield, Washington county, Pa., price to be four and one-quarter (4¼) cents per bushel, Cincinnati or Louisville gauge. Terms cash when delivered in Pittsburgh, free of all charges.           (Signed)      J. W. GRUBBS & CO."

It appeared that the coal was to be delivered at the first rise of the river. The barges were delivered to defendants, who took them to their works and loaded them, but could not return them to Pittsburgh on account of the low stage of water. On the 21st of September 1875, while the loaded barges were lying at defendants' works, J. W. Grubbs, one of the defendants, filed his petition in bankruptcy; a few days prior, however, a number of creditors who had judgments before justices of the peace, had executions issued thereon and levied on the barges of coal, but were restrained from proceeding therein by an injunction issued by the United States District Court. The barges not having been returned to plaintiffs, they, on the 16th November 1875, issued a writ of replevin and the barges, with the coal therein, were delivered to them. Afterwards the execution creditors presented their petition to the court, praying leave to intervene, which was allowed.

In their general charge the court, inter alia, said:

"Now from the forms of this contract and the undisputed fact that the coal had not been delivered in whole or in part to the plaintiffs when they brought their action, I feel bound to instruct you, as a matter of law, that, as to the coal, the property therein had not passed to the plaintiffs, and consequently that they are not entitled to damages for its detention. As to the coal, therefore, you should find that the property was in the defendants, and you will assess damages to the defendants for the detention of the coal by the plaintiffs from the 16th of November 1875, to the date of your verdict, and the measure of the damages will be the interest on what you may estimate as the value of the coal from November 16th 1875, to the present time.

"This instruction may seem to you to be a hardship to the plaintiffs, but it results logically from the rule of law that in a sale of personal goods and chattels the property therein does not pass to the buyer so long as anything remains to be done to it by the seller."

Verdict for plaintiffs for damages for detention of barges $120,

[Sneathen *v.* Grubbs.]

and for defendants $522.98 interest on the value of the coal. Plaintiffs took this writ, and for error, inter alia, assigned the above portions of the charge.

*Johnston & Fetterman,* for plaintiffs in error.—The facts do not present the case of a simple contract for the sale of a chattel and non-delivery thereof by the vendor, but do show that the defendant agreed to load a barge, to be furnished by plaintiffs, with coal for the plaintiffs, and afterwards to return or deliver the barges with the coal to plaintiffs at a place designated, and the aggregate value thereof to be dependent upon the sale thereof in one of two markets.

It is conceded that by the mere agreement to load the barges with coal no property in the coal vested in plaintiffs, but after the coal was mined and separated from the other coal by defendants and loaded into the barges of plaintiffs there was such an appropriation of it to the contract by the defendants that the property therein became vested in the plaintiffs, subject only to the right of the defendants to be paid therefor as soon as the quantity was ascertained. The position we assume is fully sustained by authority: Rugg *v.* Minett, 11 East 210; Langton *v.* Higgins, 4 Hurlst. & N. 402; Aldridge *v.* Johnson, 7 E. & B. 885; Benjamin on Sales, sects. 358, 359, 370; Dennis *v.* Alexander, 3 Barr 50; Golder *v.* Ogden, 3 Harris 528; Winslow *v.* Leonard, 12 Id. 14; Hutchinson *v.* Hunter, 7 Barr 140; Records & Co. *v.* P., W. & B. Railway Co., 9 Phila. 55.

*Crumrine & Donnan,* for defendants in error.—To determine this question of the passing of title, well settled rules of law have long since been established and are constantly applied by the courts; two of which rules, as stated by Blackburn 151, 152, and discussed by Benjamin, sect. 318 et. seq., are as follows:—

1st. Where by the agreement the vendor is to do anything to the goods for the purpose of putting them into that state in which the purchaser is to be bound to accept them, or, as it is sometimes worded, into a deliverable state, the performance of those things shall in the absence of circumstances indicating a contrary intention, be taken to be a condition precedent to the vesting of the property.

2d. Where anything remains to be done to the goods, for the purpose of ascertaining the price, as by weighing, measuring, or testing the goods, where the price is to depend upon the quantity or quality of the goods, the performance of these things also shall be a condition precedent to the transfer of the property, although the individual goods be ascertained, and they are in a state in which they ought to be accepted.

The contract imposed a further duty upon the defendants after the coals had been loaded in the barges, to wit: to transport them

[Sneathen *v.* Grubbs.]

into plaintiffs' landing, which was the only place where plaintiffs were bound to accept them, as in a deliverable state; property in them had not passed to plaintiffs when they were seized and delivered under the writ of replevin.  This position is fully sustained by the following authorities: Acraman *v.* Morrice, 8 C. B. 449; 1 Langdell L. C. on Sales 676, 681; Logan *v.* Le Mesurier, 6 Moore P. C. 116; 1 Smith's Leading Cases 148; Shaw *v.* Nudd, 8 Pick. 9; McCandlish *v.* Newman, 10 Harris 460; Lester *v.* McDowell, 6 Id. 91; Nesbit *v.* Burry, 1 Casey 208; Nicholson *v.* Taylor, 7 Id. 128; Thompson *v.* Franks, 1 Wright 327; Rochester Oil Co. *v.* Hughey, 6 P. F. Smith 322; Bigley *v.* Risher, 13 Id. 152; Mitchell *v.* Commonwealth, 1 Wright 187.

The judgment of the Supreme Court was entered November 25th 1878,

PER CURIAM.—Delivery of the coal in these cases had not taken place, and all the terms of the contract of sale had not been performed.  No title to the coal passed which could be enforced in replevin by the purchasers.  The remedy in breach of the contract of sale was in a different action.

Judgment affirmed in each case.