BACHARACH & CO. v. CHESTER FREIGHT LINE.

APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS
OF DELAWARE COUNTY.

Argued February 13, 1890—Decided March 24, 1890.

1. When goods are delivered to a carrier, consigned generally to a pur-
chaser at the city of his business and without any particular place of
delivery designated, the title of the consignor passes upon delivery of
the goods to the carrier.

2. In such case, the carrier, by a condition in the bill of lading, cannot
subject the goods to a lien for prior freights due from the consignor on
other consignments of goods, and refuse to deliver until such prior
freights are paid.

3. Though the consignee at first refuse to accept delivery, because of a
mistake on his part, on his discovery thereof and demand made before
the rights of others have intervened he may still enforce his right to
the goods by replevin against the carrier.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS, McCOL-
LUM and MITCHELL, JJ.

No. 191 January Term 1890, Sup. Ct.; court below, No. 93
December Term 1887, C. P.

On November 14, 1887, Bacharach, Loeb & Co., brought re-
plevin against the Chester Freight Line and Morton & Black,
for three cases of dry goods. The goods being delivered to the
plaintiffs, issue.

At the trial on March 20, 1889, it was made to appear that
the plaintiffs, doing business at Philadelphia, Pa., had given
an order for three cases of goods to one Talcot, of New York
city, doing business as Talcot & Co., the commission merchant
of Ashworth & Downey, manufacturers, doing business at Ches-
ter, Pa. The order was transmitted to Ashworth & Downey,
who on October 12, 1887, shipped the goods by the Chester
Freight line consigned to Bacharach, Loeb & Co. at Philadel-
phia, generally, a bill of lading being taken, one of the condi-
tions of which was the following:

" The goods herein referred to shall be subject to a lien, and
may be retained for the freight and charges on other goods, due

from the party on whose account they are transported, as well as for the freight and charges on the goods retained."

At the time of the shipment, Ashworth & Downey were indebted to the Chester Freight line in the sum of $124.46, on account of freights on other and prior shipments.

Bacharach, Loeb & Co., when notified that the goods were ready for delivery by the carrier, refused to receive them, under the mistaken belief that they had been shipped by other persons, an order to whom had been filled already. Subsequently they discovered their mistake, notified the defendant company thereof on October 19th, and on November 3d demanded delivery, which was refused without payment to the company of the freights due from Ashworth & Downey, upon the former shipments.

Ashworth & Downey having failed, Mor . & Black, holding a judgment against them, caused an execution to issue and levy to be made on November 7th, whereon the goods on November 14th were sold to them as the property of Ashworth & Downey at constable's sale. This suit was then brought.

The court, CLAYTON, P. J., instructed the jury as follows:

It appears that Talcot & Co. maintained that the title to these goods was in Bacharach, Loeb & Co., they alleging that they had sold them to them. As between Bacharach, Loeb & Co. and Talcot, Bacharach resisted that claim, and said that as the goods had not been delivered according to contract he declined to take them, and so a dispute arose between them. Bacharach claims that the mistake he had made was the result of the failure in Talcot to send a bill for the goods so he could have known it. [They settled the claim by affirming the contract and taking the goods, and Talcot holding them harmless. This was a perfectly correct agreement between them if everything else was straight and in good faith, and you have nothing to do with it.] [4] You will see further on, what the point is that you have to consider. . . . . .

The plaintiffs request the court to charge [inter alia] as follows:

3. Ashworth & Downey could not bind the goods of their vendee for freight charges due on the goods of Ashworth &

Charge of Court below.

Downey, and the Freight Line cannot hold these goods for said charges.

Answer : If you find a perfect sale, in due course of trade, on the usual terms and in good faith, then I charge you that the title to these goods, when the Freight Line received them, was in the plaintiff, and that the seller could not charge them with his debt upon other accounts.[1]

The defendants request the court to charge the jury :

8. Unless the plaintiffs paid or tendered all freight charges due before Morton & Black issued execution, they cannot recover. Payment or tender after suit is brought is too late, they having declined them at first.

Answer: This is affirmed, but the only freight they could lawfully demand was that due upon these special goods. They could not claim freight due by the seller on any other goods shipped by them, and I believe the freight was tendered on these goods, or at least could not be demanded until the goods were delivered. I don't know as there is any question about the freight on these goods. The other freight I have already settled. It cannot be demanded.[2]

9. Payment of back freight was a condition upon which the bill of lading was issued and goods shipped, and does not pass title to plaintiffs unless they comply with the condition, and does not avail them as evidence to show ownership of goods or title to them. The consignors or consignees might have objected to the shipment of the goods on this condition, and it would not have been binding, but having accepted the condition without objection it became part of the contract of affreightment.

Answer : As to the consignors, this point is affirmed, but not as to the consignees. The consignors are Ashworth & Downey; as to them the contract was good, so far as they were concerned, or so far as any property of theirs was concerned in the hands of the company, but the consignors could not pledge goods which they had already sold and to which they had parted with the title, for the payment of other debts due by them without special authority from the purchasers. If the sale had not been consummated and the title was in them, they could make such a contract, but the law does not permit one man to pay his debts with another man's property. Such a contract would be void, as it is unreasonable and against public policy. So you

Charge of Court below.

see, gentlemen, the chief points in the case are two: First, Were the goods sold either by Ashworth & Downey, or by their commission merchant, Talcot, in New York, in the due course of trade and in the usual way, unconditionally, with no special contract as to delivery other than that which is implied in all sales? That is the first question. Second, Did the plaintiffs correct their mistake within a reasonable time? If you find these points in favor of the plaintiffs they are entitled to your verdict. If you find them against them, the verdict should be for the defendants. As before stated you have nothing to do with the dispute between Talcot and the plaintiffs, as to which of them held the title. If either of them held the title to these goods at the date of the shipment, it makes no difference to you which one sues; they have settled that matter between themselves. Bacharach, Loeb & Co. are here as plaintiffs, affirming their contract and claiming title to these goods. The only two questions for you are those before stated; first, was the sale a regular one in good faith, in due course of trade; an unconditional sale, without any other than the usual conditions of sale. If it was, then the title passed to the purchasers, not at the moment of the shipment on the boat, but as soon as the goods left the manufacturers' house; as soon as they were packed up, boxed and set apart they were at the purchasers' risk and were the purchasers' goods. The mere fact that directions had been given to send them to Philadelphia, New York or any other place, does not change the title, but if there was a special agreement at the time the contract was made or an understanding that the goods be received in Philadelphia, then it would be otherwise. The second question, as I said before, is, was the refusal to receive the goods a mistake corrected within due time, within a reasonable time? If it was, then it was the duty of the freight house to deliver the goods on the correction of it.[3] . . . . .

The jury returned a verdict in favor of the plaintiffs. A rule for a new trial having been discharged, the defendants took this appeal, assigning for error:

1. The answer to the plaintiffs' point.[1]
2, 3. The answers to the defendants' points.[2] [3]
4. The portion of the charge embraced in [  ][4]

Opinion of the Court.

*Mr. W. B. Broomall* and *Mr. John B. Hinkson*, for the appellants.

Counsel cited: Benj. on Sales, ed. 1888, 279, 314, 647, 651; Ballentine v. Robinson, 46 Pa. 177; Sneathen v. Grubbs, 88 Pa. 147; First N. Bank v. Andrews, 51 Am. Rep. 51; Fogel v. Brubaker, 122 Pa. 7; Taylor v. Cole, 111 Mass. 363; Penna. R. Co. v. Am. Oil Works, 126 Pa. 485.

*Mr. J. B. Hannum*, for the appellees.

Counsel cited: Zinn v. Rowley, 4 Pa. 169; Hutchinson v. Hunter, 7 Pa. 140; Golder v. Ogden, 15 Pa. 528; Haldeman v. Duncan, 51 Pa. 66; Schmertz v. Dwyer, 53 Pa. 335; Benj. on Sales, ed. 1888, 283; Schumacher v. Eby, 24 Pa. 521; Phila. etc. R. Co. v. Wireman, 88 Pa. 264; § 1, act of September 24, 1866, P. L. (1867) 1363; Penna. R. Co. v. Am. Oil Works, 126 Pa. 485.

OPINION, MR. JUSTICE GREEN:

We find no error in this record. The learned court below very correctly and fairly left to the jury the only questions of fact which could affect the determination of the case, and those questions were found for the plaintiffs. The goods were delivered to the carrier, consigned generally to the plaintiffs at Philadelphia, without any particular place of delivery being designated, and upon such a delivery to the carrier the title of Ashworth & Downey certainly passed: Schumacher v. Eby, 24 Pa. 521; Phila. etc. R. Co. v. Wireman, 88 Pa. 264. It is true that the plaintiffs at first declined to receive them under the influence of a mistake, but as they promptly corrected it upon its discovery, and the goods were still in the hands of the defendant when the plaintiffs requested their delivery, on October 19th, and demanded it on November 3d, and no other rights had intervened, the situation was the same as if there had been no refusal. The action of the defendant in refusing delivery after the notice to deliver had been sent to them, was without excuse. The attempt to subject the goods to a lien for prior freights due from Ashworth & Downey on other consignments was without legal right: Penna. R. Co. v. Am. Oil Works, 126 Pa. 485. The bona fides of the sale to the plaintiffs was also submitted to the jury, and found for them. As to the

Syllabus.

right of these plaintiffs to maintain the action there can be no question, and whether Talcot has an interest in their recovery is not a matter of any concern to the defendant, who is a mere carrier. The plaintiffs were the consignees, and, as against the carrier, they had a clear right of recovery, after their notice to deliver the goods and a refusal by the carrier. There is no error in the answers to the eighth and ninth points of the defendants, when read together, as they should be. Of course, Morton & Black have no title under the constable's sale.

Judgment affirmed.