## Dannemiller, Appellants, *v*. Kirkpatrick.

*Sales—Delivery—Place of delivery—Carrier—Question for jury.*

In the absence of an agreement to the contrary, when a vendor sells goods to a vendee residing at a distance, a delivery of the goods to a carrier for transportation is a delivery to the purchaser, and especially is this true when a bill of lading naming the purchaser as a consignee is transmitted to and received by the purchaser. The delivery to the carrier vests the title to the property in the purchaser, and the risks of transportation must be assumed by him. This rule, however, does not obtain where the

parties have otherwise stipulated in their agreement.　If it is the intention of the parties, and it so appears from their contract, that the delivery is to take place at the destination of the property, and that the title is to remain in the consignor until that time, then delivery to the carrier does not divest the title of the vendor to the property, nor pass it to the purchaser, until it reaches its destination, and the hazards of transportation are at the risk of the consignor.　It therefore becomes a question in cases of this character as to where the delivery of the goods is to be made and when the title is to pass to the purchaser.　If the facts are not in dispute it is a question of law for the court, but if the evidence is conflicting the question must be determined by a jury.

Plaintiffs, importers and roasters of coffee, gave to defendants, wholesale grocers, the exclusive right to sell, in a certain district, a brand of coffee prepared by plaintiffs.　By the agreement plaintiffs were to bill the coffee " at the same price f. o. b., Pittsburg, as Arbuckle & Co., or Woolson Spice Co., with the same terms of rebate and cash discount."　Numerous carloads were delivered under the agreement.　All the invoices contained the following : " All goods delivered to carriers in good order. Claims for damage thereafter 'for breakage must be made against the transportation company delivering the goods."　A particular carload was ordered by defendants, and shipped by plaintiffs with an invoice accompanied by a bill of lading in which the defendants were named as consignees.　The car was lost in transit, and the defendant returned the bill of lading to the plaintiffs.　There was parol evidence that the defendant had designated the carrier by which the coffee was to be shipped, and that the carload lost was not to be delivered at Pittsburg.　Some memoranda placed on the invoice by the defendants apparently indicated that they considered the carload as their property.　*Held*, that the question of the place of delivery of the coffee was one of fact to be determined by a jury.

Miller v. Seaman, 176 Pa. 291, distinguished.

Argued Oct. 30, 1901.　Appeal, No. 69, Oct. T., 1901, by plaintiffs, from judgment of C. P. No. 2, Allegheny Co., Jan. T., 1899 No. 875, non obstante veredicto, in case of Benedict Dannemiller et al., trading as Dannemiller & Company v. Rebecca Kirkpatrick et al., trading as Allen Kirkpatrick & Company. Before McCollum, C. J., Mitchell, Fell, Brown, Mestrezat and Potter, JJ.　Reversed.

Assumpsit for goods sold and delivered.　Before Frazer, P. J.

The facts are fully stated in the opinion of the Supreme Court.

A verdict was taken for plaintiffs, but subsequently the court entered judgment for defendants non obstante veredicto.

*Error assigned* was in entering judgment for defendants non obstante veredicto.

*A. B. Reid*, with him *A. V. D. Watterson*, for appellants.— If there was any evidence adduced at the trial of the case in the court below on behalf of appellant, which could have been submitted to a jury and upon which the jury could have found a verdict for them, such evidence is conclusive here of their right to the verdict of which they were deprived by the action of the court below in entering the judgment non obstante veredicto : Dixon v. Daub, 17 Pa. Superior Ct. 168.

Wherever the terms of an agreement are equivocal or doubtful, or the language of a contract is ambiguous, the interpretation of it by the parties is entitled to great if not controlling influence : Straus & Sons v. Wanamaker, 175 Pa. 213; Ellis v. Rice, 195 Pa. 42.

In the absence of a clear agreement to the contrary, the delivery of the goods to a common carrier, consigned to the purchaser at his proper place of business, and especially when the bill of lading, the most effective symbol and muniment of title, is made out in the name of the purchasers and transmitted to them with the invoice, is a delivery to the purchaser : Griffith v. Ingledew, 6 S. & R. 429 ; Schumacher v. Eby, 24 Pa. 521, 525 ; Hopkins v. Beebe, 26 Pa. 89 ; Schmertz v. Dwyer, 53 Pa. 335, 338 ; Phila., etc., R. R. Co. v. Wireman, 88 Pa. 264, 268 ; Com. v. Fleming, 130 Pa. 138 ; Diversy v. Kellogg, 44 Ill. 114 ; Whiting v. Farrend, 1 Conn. 60 ; Meyer Bros. Drug Co. v. McMahan, 50 Mo. App. 18.

The vesting of title depends upon the intention of the parties and is to be determined by the surrounding circumstances and the conduct of the parties : Winslow v. Leonard, 24 Pa. 16, 17 ; Gonser. v. Smith, 115 Pa. 452; Com. v. Hess, 148 Pa. 98 ; Hatch v. Standard Oil Co., 100 U. S. 124 ; Lehigh Coal & Nav. Co. v. Harlan, 27 Pa. 429 ; Pratt v. Campbell, 24 Pa. 184.

*J. J. Miller*, for appellee.—Under the facts, excluding the agreement, a consignment at Canton by plaintiffs to defendants at Pittsburg, evidenced by the bill of lading alone, will not entitle the plaintiffs to recover : Porter on Bills of Lading, sec. 480 ; Neimeyer Lumber Co. v. Burlington, etc., R. R. Co.,

54 Neb. 321; 74 N. W. Rep. 670; Bacharach & Co. v. Chester Freight Line, 133 Pa. 414; Chopin v. Clark, 31 La. Ann. 846; Audenreid v. Randall, 3 Cliff. (C. C.) 99.

The plaintiffs cannot recover under the fifth clause of the agreement, because there was no delivery in Pittsburg: Braddock Glass Co. v. Irwin & Co., 153 Pa. 440; McNeal v. Braun, 53 N. J. Law Jour. 617; Sneathen v. Grubbs, 88 Pa. 147; Taylor v. Turner, 87 Ill. 896; Meiggs & Co. v. McGinn, 6 Del. County Rep. 174.

The court below was right in deciding this case on the authority of Miller v. Seaman, 176 Pa. 291.

In no event can the plaintiff recover for the reason that the agreement between the parties is one of agency.

OPINION BY MR. JUSTICE MESTREZAT, January 6, 1902:

Dannemiller & Company, the plaintiffs, are importers and roasters of coffee, having their place of business at Canton, in the state of Ohio. Allen Kirkpatrick & Company, the defendants, are wholesale grocers and carry on their business in the city of Pittsburg, in the state of Pennsylvania. By an agreement dated January 17, 1896, the defendants were given the exclusive right to sell in certain parts of western Pennsylvania a brand of coffee prepared by the plaintiffs and known as "Cordova" coffee. The agreement was to continue in force for one year and as much longer thereafter as was satisfactory to both parties. The plaintiffs, with certain exceptions, were to sell no coffee within the designated territory. In consideration of having the exclusive right to sell the "Cordova" coffee in the territory named in the agreement, the defendants agreed to give this brand of coffee preference in sales made by them to all other coffees. The fifth paragraph of said agreement is as follows: " The said Dannemiller & Company do hereby agree to bill ' Cordova ' coffee at the same price f. o. b. Pittsburg as Arbuckles & Company or Woolson Spice Company with same terms of rebate and cash discount. In the event of advance or decline in price of same, it is agreed that upon all stock unsold in possession of said Allen Kirkpatrick & Company that they credit or charge the same to the account of said Dannemiller & Company; in short, the said Dannemiller & Company guarantee the price on all unsold coffee by having

the advantage of receiving credit on any advance in price on unsold stock."

During the years 1896, 1897 and 1898 the plaintiffs shipped to the defendants numerous carloads of "Cordova" coffee. On March 18, 1898, the defendants ordered a carload of coffee from the plaintiffs, and it was shipped on March 21, 1898, from Canton via the Cleveland, Canton & Southern Railroad and the Baltimore & Ohio Railroad. It was consigned to the defendants at Pittsburg. On the day of the shipment the plaintiffs sent to the defendants an invoice of the coffee, accompanied by a bill of lading for the same in which the defendants were named as consignee. The invoice and bill of lading were shortly thereafter received by the defendants, who retained the bill of lading until April 25, 1898, when they returned it to the plaintiffs. All the invoices of coffee shipped by the plaintiffs to the defendants under the agreement between the parties, contained the following: "All goods delivered to the carriers in good order. Claims for damage thereafter, or breakage, must be made against the transportation company delivering the goods."

The carload of coffee shipped by the plaintiffs on March 21, 1898, was lost in transit and never reached its destination. The defendants having declined to pay for it this action was instituted to recover its value. On the trial of the cause the defendants set up three grounds of defense: (1) That there was no delivery in Pittsburg, as required by the agreement; (2) that the agreement was one of agency, and there could be no recovery without showing the receipt of the coffee by the defendants; and (3) "because a sale at Canton by plaintiffs to defendants at Pittsburg, evidenced by the bill of lading alone, the plaintiffs cannot recover." The learned trial judge directed a verdict for the plaintiffs, but reserved the question whether there was any evidence which entitled the plaintiffs to recover. Subsequently a judgment non obstante veredicto was directed to be entered for the defendants. The court in the opinion filed, entering this judgment, held that the only question in the case was whether there was a delivery of the coffee to defendants; that this question must be determined by the terms of the contract which, it was claimed, were not in dispute, and that the plaintiffs' right to recover depends upon

the meaning of that part of the agreement which reads " Bill
' Cordova ' coffee at same price f. o. b. Pittsburg as Arbuckles
& Company or Woolson Spice Company." Having construed
the contract to require a delivery of the coffee at Pittsburg, the
court held that at the time it was lost in transit the title was
in the plaintiffs, and hence the defendants were not liable in
this action.

It will be conceded that if there was no delivery of the cof-
fee to the defendants the loss of the goods must fall upon the
plaintiffs, who still retained the title. If a vendor agrees to
deliver at a certain place, the property is at his risk until it is
so delivered: Sneathen v. Grubbs, 88 Pa. 147; McNeal v.
Braun, 53 N. J. L. 617 ; Taylor v. Cole, 111 Mass. 363. But
we cannot agree with the learned trial judge that the terms of
the written agreement in this case determined conclusively the
place of delivery, and that it was the duty of the court to with-
draw the question from the jury. The language of the con-
tract relied upon for such an interpretation is the following,
part of which is quoted in the opinion of the court just cited :
" The said Dannemiller & Company do hereby agree to bill
' Cordova' coffee at the same price f. o. b. Pittsburg as Arbuckles
& Compaby or Woolson Spice Company, with the same terms
of rebate and cash discount." It was upon the construction
of this clause that the learned judge decided that the contract
required the plaintiffs to deliver the coffee to the defendants at
Pittsburg. It is apparent, however, that this language of itself
does not sustain the interpretation given it. It requires the
plaintiffs to " bill " the coffee at the same price and on the same
terms as competing firms in the city of Pittsburg. To " bill "
coffee f. o. b. Pittsburg is not synonymous with the expression
to " deliver " coffee f. o. b. Pittsburg. The language used in
the agreement implied that the cost of the coffee at Pittsburg,
including the expense of placing it there, should not exceed the
price of coffee sold by firms competing with the plaintiffs at
Pittsburg. It was also some evidence, though not conclusive
that the coffee was to be delivered to the purchasers at Pitts-
burg : Neimeyer Lumber Co. v. Burlington & M. R. R. Co., 54
Neb. 321, and cases there cited.

The question of delivery of the coffee was under the facts
disclosed on the trial, one of fact for the jury. It is well set-

tled that in the absence of an agreement to the contrary, when a vendor sells goods to a vendee residing at a distance, a delivery of the goods to a carrier for transportation is a delivery to the purchaser. And especially is this true when a bill of lading naming the purchaser as consignee is transmitted to and received by the purchaser. The delivery to the carrier vests the title to the property in the purchaser, and the risks of transportation must be assumed by him: Schmertz v. Dwyer, 53 Pa. 335; Phila. etc., R. R. Co. v. Wireman, 88 Pa. 265; Bacharach & Co. v. Chester Freight Line, 133 Pa. 414; Putnam v. Tillotson, 13 Metc. 517. This rule, however, does not obtain where the parties have otherwise stipulated in their agreement. If it is the intention of the parties, and it so appears from the contract, that delivery is to take place at the destination of the property, and that the title is to remain in the consignor until that time, then delivery to the carrier does not divest the title of the vendor to the property, nor pass it to the purchaser, until it reaches its destination, and the hazards of transportation are at the risk of the consignor. It, therefore, becomes a question in cases of this character as to where the delivery of the goods is to be made and when the title is to pass to the purchaser. If the facts are not in dispute it is a question of law for the court, but if the evidence is conflicting the question must be determined by a jury: Neimeyer Lumber Co. v. Burlington & M. R. R. Co., supra; McLaughlin v. Marston, 78 Wis. 670; Merchants' Nat. Bank v. Bangs, 102 Mass. 291; Gibbons v. Robinson, 63 Mich. 146; Alabama G. S. R. Co. v. Mt. Vernon Co., 84 Ala.

In the light of these principles let us examine the case in hand. The appellees maintain and the court so held that the terms of the contract were not in dispute, and that the proper construction of it required the plaintiffs to deliver the coffee at Pittsburg. As suggested above, to sustain this construction the court must read the clause referred to as " deliver " instead of " bill " the coffee f. o. b. Pittsburg. But the court cannot do this under the facts of the case. In the absence of this contract the delivery to the carrier was a delivery to the defendants at Canton, Ohio. It, therefore, required clear and explicit language in the contract to warrant the court in holding that such was not the intention of the parties. While, as we have

said, the prepayment of freight may be evidence of an intention to deliver the goods to the buyer at his place of business, yet the court is not justified in determining the question from that fact alone to the exclusion of the other testimony in the case. In support of the contention that the delivery of the goods to the carrier was a delivery to the defendants, the plaintiffs refer to the fact that they agreed to " bill " and not to " deliver " the goods, freight prepaid, to the defendants at Pittsburg ; that all invoices of coffee shipped during the period covered by the contract contained a notice that claims for damage to the goods must be made against the transportation company, and that the defendants received these invoices without objection ; that certain communications from defendants to plaintiffs and memoranda placed on the invoice of the carload of coffee, showed that the defendants regarded the coffee as belonging to them at the time it was lost. In further support of their claim as to place of delivery, the plaintiffs introduced parol testimony to show that the defendants had designated the carrier by which the coffee was to be shipped and that the plaintiffs were not to deliver the coffee at Pittsburg. While maintaining that the contract itself shows that the plaintiffs were to deliver the coffee at Pittsburg, the defendants claim that the other testimony in the case also sustains this position. They contend that the evidence shows that at the time the agreement was entered into both parties knew that a price f. o. b. Pittsburg meant a delivery at Pittsburg, and that they dealt with each other with this understanding.

It is apparent from the contention of the parties and from the testimony in the case that the question of the place of delivery of the coffee is one of fact to be determined by a jury. The written contract is not the only evidence on this point. If it were, and its terms were explicit, the court could determine the question without the aid of a jury.

The learned judge seems to think that the case at bar is identical with Miller v. Seaman, 176 Pa. 291, and that the initial letters f. o. b. were interpreted in that case as meaning a delivery of the goods at the designated place. But an examination of the case and of the opinion of the court below shows that the case was ruled against the plaintiff on the ground that the contract was an executory one, that the title to the lumber

was in the vendor when it was lost, and that no title could pass to the vendee until the lumber had been inspected and measured or estimated. This could not be done, as the lumber in controversy had been swept away by a flood from the yard in which it was piled at the time of the agreement to sell. This court affirmed the judgment. The decision of the case did not require a construction of the provision "shipping account f. o. b. Williamsport."

It is contended further on behalf of the defendants that there can be no recovery here for the reason that the agreement between the parties is one of agency. If this were true the position would be tenable. This defense was not considered by the learned trial judge, his ruling in favor of the defendants being based solely on the ground that the agreement required a delivery of the coffee at Pittsburg. As the view we take of the case requires it in any event to be sent back for another trial, we do not deem it necessary or proper to express an opinion on this branch of the defense under the testimony submitted on the trial.

The assignment of error is sustained, the judgment is reversed, and a venire facias de novo is awarded.