# Ebstein *v.* Philadelphia Knitting Mills Company, Inc. Appellant.

*Contract—Sale—Affidavit of defense.*

1. In an action against a corporation to recover the price of a number of bars of steel tendered for delivery which was refused, an affidavit of defense is insufficient which admits the execution of the written order for the steel, but avers that the defendant's general manager gave the plaintiff's salesman an indefinite order for a few pieces of steel, no sizes being specified, and nothing being said as to their price; that the salesman afterwards dictated to the defendant's stenographer an order, expressed in formal terms specifying particularly a certain number of bars, their size and their price, that subsequently this order was brought by the stenographer to the general manager for signature, and that the latter read it and signed it in the course of business without observing that the order called for any special quantity.

2. In an action to recover the price of eighteen bars of steel of various dimensions specified at "60c. lb. del'd here 12 ft. bars," the order being executed in Philadelphia, and addressed to the plaintiff in Belgium, an affidavit of defense is sufficient to prevent judgment which admits that the goods were shipped but avers that they never reached the defendant. If in such a case there was an unjustifiable breach of an executory contract by the defendant, the measure of damages would be the difference, if any, between the price agreed to be paid, and the market value of the goods at the time and place of the breach. As the time and place of delivery was not clearly specified in the contract these matters were for the jury to determine.

Argued Oct. 5, 1911. Appeal, No. 42, Oct. T., 1911, by defendant, from order of C. P. No. 4, Phila. Co., Dec. Term, 1910, No. 1,042, making absolute rule for judgment for want of a sufficient affidavit of defense in case of Jacob Ebstein and Isidor Ebstein, trading as Metropolitan Manufacturing Company, v. Philadelphia Knitting Mills Company, Inc. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Reversed.

Assumpsit to recover the price of eighteen steel bars.

The action was brought upon the following order signed by the defendant's general manager.

"Philadelphia, May 10, 1910.
"Ordered from
    "Metropolitan Mfg. Co.,
        "Brussels, Belgium.
"3 Bars ea. $\frac{3}{4}''$, $\frac{7}{8}''$, $1''$ oct. Chisel steel.
"3 Bars ea. $1''$, $1\frac{1}{4}''$, $1\frac{1}{2}''$ sq. drifts steel.
"60c. lb. del'd here 12 ft. bars.
            "Philadelphia Knitting Mills Co.,
                        "(Sgd.)  Mollar."


Charles Mollar filed the following affidavit of defense:

On May 10, 1910, a sales agent or soliciting agent for the plaintiff company called at the office of the defendant company and had an·interview with deponent, in which he, the said agent, exhibited certain samples of steel which he claimed were of very superior quality, and especially adapted for the manufacture of chisels, or tools of that character, which might be needed by the machinist of the defendant's factory. The defendant is not a manufacturer of chisels or machinery of any kind, but is a manufacturer of hosiery, and the only need it has for chisels or tools of that kind is an occasional one for the purpose of repairing machinery which should get out of order. This agent spoke of the steel as if it came in small bars, a foot or a foot and a half long. He stated that he had sold some to Mr. Pooley, the furniture manufacturer, and deponent being very busy, finally agreed to take a few pieces for the purpose of manufacturing chisels alone, his understanding being that a few, not exceeding a half dozen bars of steel, of a length of a foot or a foot and a half, would be shipped to him, to see whether he could make use of them, and the instructions given to the said sales agent or soliciting salesman, were that these few bars of steel were to be packed in the box of steel that was to be consigned to Mr. Pooley, whose factory was very close to the factory of the defendant company, and that when his steel arrived, the defendant company could get these few bars out of his box. Deponent alleges·that the said soliciting agent or

salesman of the plaintiff company made many visits to
various factories and manufacturers in the city of Philadel-
phia, and in every one he fraudulently misrepresented
what he had for sale, and fraudulently secured orders,
which he afterwards, by manipulation, very largely in-
creased in quantity, and shipped thousands of dollars
worth of material to the city of Philadelphia, where all his
orders would not have amounted to one-tenth part of that
much in the intention of the parties ordering the goods.
That after having secured a verbal order from deponent he
went out into the outside office and instructed the sten-
ographer there to write out an order, which the said sten-
ographer, acting under his instructions, and not under
deponent's instructions, did, in the language set forth
in said exhibit "A," writing the same upon one of the bill
heads or letter heads of the defendant company. That
in dictating the order to the stenographer, the said agent,
whose name is entirely unknown to deponent, intended
to cheat and defraud the defendant company by having
them, owing to the ignorance of deponent in regard to the
matter, order a large quantity of goods, in writing, in
violation of the agreement which had been made between
deponent and the said agent as to the quantity of goods
which the defendant company would buy. The said
stenographer, after having written the order, in accord-
ance with the instructions of the agent, brought the same
to deponent, along with other papers, to be signed, and
as usual in the course of business, deponent signed the
same with a rubber stamp of the defendant company,
not writing it and not observing that the order called for
any special quantity, and believing that it called for the
amounts which he had instructed the said sales agent he
would be willing to purchase, to wit, a few bars, of the
length of a foot or a foot and a half each, and as deponent
read the order, it only called for six bars altogether, and
the words "twelve feet long" entirely escaped his notice,
owing to the hurried way in which the thing was done and
the paper signed. That the preparation of the said order

352 EBSTEIN *v.* PHILA. K. MILLS CO., Appellant.

Statement of Facts—Opinion of Court below.   [48 Pa. Superior Ct.

by the stenographer, under the direction of the said sales agent, was a fraud on his part and was by him intended to obtain this order in this fraudulent manner, he knowing full well at the time that it was in violation of what deponent had said to him, and that deponent had not ordered or intended to order any large quantity of material of that character, that it would have been impossible to put any such quantities as this order calls for in the box with the shipment to Mr. Pooley, because, as deponent is informed, this shipment alone fills several boxes, said boxes containing nothing but the goods shipped to the deponent company.

Deponent heard nothing further from the matter until he was informed that a number of boxes were at the station of the Philadelphia & Reading Railway Company, consigned to this company, and thereupon immediately notified the railroad that the defendant company would not accept the same, and notified the plaintiffs, through their agent, the Inter-Oceanic Commercial Company, 1133 Broadway, New York, that they would not accept the same as the order had been for only enough material to make a few chisels, for samples, and was to be inclosed in a package for Pooley & Company; that this company therefore refused to accept them and the same were never delivered to the defendant company, but are still either in the possession of the railroad company or have been taken back by the plaintiffs, and the defendant company and deponent have no knowledge as to what has become of them.

Deponent is advised and submits that having declined to receive the goods, and the same never having been in the possession of the defendant, plaintiffs have no right of action under any circumstances, for the price of the same.

All of which deponent expects to be able to prove upon the trial of the cause.

AUDENREID, J., filed the following opinion:

This action is brought to recover the price of eighteen

bars of steel that the plaintiffs allege they delivered to the defendant under a written order.

The defendant admits the execution of the written order for the bars for the price of which the plaintiffs sue; the tender of the bars for delivery; and its refusal to accept and pay for them.

The defense set up is that Mollar, the defendant's general manager, when he signed the order believed, in spite of his eyes, that it did not call for more than a few bars of the length of a foot or a foot and a half each, although the order plainly specifies three bars of each of three different sizes of chisel steel, and three bars of each of three different sizes of drift steel, and provides that these shall be twelve-foot bars.

It appears by the affidavit of defense that after some conversation with the plaintiff's sales agent about the quality of steel offered for sale, Mollar "agreed to take a few pieces." It is averred, it is true, that the salesman had spoken of the steel "as if it came in small bars, a foot or a foot and a half long," but exactly what was said by him is not set forth; and while it is stated in the affidavit that the understanding of Mollar when he "agreed to take a few pieces" was "that a few, not exceeding half a dozen bars of the steel, of the length of a foot or a foot and a half, would be shipped to him," it nowhere appears that this understanding was communicated to or shared by the salesman.

It is alleged by the affidavit that the salesman, on leaving the presence of Mollar, stopped in the defendant's outer office and dictated to the stenographer there the order above referred to, and that this was subsequently, along with other papers, brought by the stenographer to Mollar for signature. The affidavit then states that Mollar, in the usual course of business, signed the order with the defendant's rubber stamp, having failed to observe, "owing to the hurried way in which the thing was done and the papers signed," that it called for any special quantity. No explanation is given as to what became

of the order after Mollar signed it, or when it passed from the defendant's office into the hands of the plaintiffs.

The averment that instead of being packed in a box with other steel, and shipped with it, to a neighbor, for delivery to the plaintiffs, the steel shipped by the plaintiffs under the order was delivered directly to the defendant, is, of course, of no importance or significance.

It is, we think, quite plain that the allusions of the defendant to the fraudulent practices of the plaintiffs' salesman on "the various factories and manufacturers in the city of Philadelphia" have no bearing on the question whether the defendant should pay for the steel that the plaintiffs sent to it.

It seems clear, also, that the speculations of Mollar as to the thoughts and intentions of the salesman when the latter dictated the form of the written order to the defendant's stenographer, are equally aside of the question presented by the case. Much is said in the affidavit of the tricks played by the plaintiffs' salesman on other persons, and of his fraudulent intentions with respect to the defendant, but it nowhere appears that Mollar was misinformed by him as to the contents of the paper that he executed, or that he was prevented by any device on the part of the plaintiffs' agent from reading it. There is no averment that the salesman was present when Mollar signed the order. In fact, the allegation in the affidavit is that he had left Mollar's office, and it is fairly implied that he never returned.

Carefully analyzed, the defendant's remaining averments amount to no more than this: That Mollar gave the plaintiffs' salesman a rather indefinite order for a few pieces of steel, no sizes being specified, and nothing being said as to their price; that the salesman dictated to the defendant's stenographer an order, expressed in formal terms, specifying particularly a certain number of bars, their size and their price; that subsequently this order was brought by the stenographer to Mollar for signature;

and that he read it and signed it, without, however, comprehending its meaning, although this was expressed quite clearly and intelligently.

We think that the defense thus presented is insufficient. The defendant concedes that it gave a written order under which the plaintiffs shipped the goods called for, but asks to be excused from accepting and paying for the goods delivered on the ground that the order was signed by its general manager under a mistake as to its contents. The mistake alleged is attributable solely to the carelessness of this official.

If he had read the order that he signed, with the slightest care, he must have seen that it did not conform to what he now says his intentions were in respect to the goods that it refers to.

Had the defendant endeavored to rectify this mistake before the plaintiffs acted on the order, its request for relief at the hands of the court would stand on firmer ground; but no such effort was made. The plaintiffs were permitted to ship their goods, and incur the cost of carriage, only to find that their trouble and expense was to go for nothing, because Mollar had read the order too hurriedly to grasp its meaning. No offer has been made by the defendant to pay the freight charges on the goods that the plaintiffs shipped. It fails even to evince a willingness to accept and pay for the "few pieces" of steel that Mollar says he thinks he intended to order. While asking equitable relief the defendant fails to do equity.

In our opinion this is a case that falls within the general rule that a mistake will not be relieved against if it is the result of the party's own negligence: Bispham's Equity, sec. 191; Lewis v. Dunlap, 5 Pa. Superior Ct. 625; Youngstown Electric Light Company v. Poor District, 21 Pa. Superior Ct. 95. No circumstances appear which would justify the court in making an exception of it, and we, therefore, feel bound to make absolute the plaintiffs' rule for judgment.

*Error assigned* was order making absolute rule for judgment for want of a sufficient affidavit of defense.

*Walter Biddle Saul*, with him *E. O. Michener*, for appellant.

*Bertram D. Rearick*, with him *Bernard A. Illoway*, for appellees.

OPINION BY HEAD, J., November 13, 1911:

In this action of assumpsit the plaintiffs, manufacturers of steel in Brussels, sought to recover the price of a certain shipment following a written order for goods signed by the defendant. The execution and delivery of the written order are not denied. The defendant in its affidavit sought to defend on two distinct grounds, (a) that the execution of the order had been induced by the fraudulent conduct of the representative of the plaintiffs; (b) that under the contract as it was actually made the goods ordered were to be delivered at a particular place named; that they never were thus delivered; that the defendant had never received them and had notified the plaintiffs and the railroad company that certain packages in the hands of the railroad company, consigned to the defendant, would not be received; that as a consequence the title to the goods had never passed to the defendant, and that even if there was a breach of the contract the plaintiffs could not under these circumstances recover the contract price. The learned court below made absolute a rule for judgment for want of a sufficient affidavit of defense and judgment was entered for the full purchase price of the goods mentioned in the order.

We agree with the learned court below that the affidavit of defense set up no facts on the first ground which would be sufficient to relieve the defendant from the liability imposed by the written order which admittedly had been signed by its executive officer. The opinion filed by the court below so fully vindicates the correctness of the

conclusion reached, as to that branch of the defense, that
it would be useless for us to again analyze the affidavit
and review the several averments upon which the de-
fense, to that extent, was predicated.  On the other ground
of defense, as we view it, the affidavit fairly discloses a
state of facts which, if established by proof, would prevent
a recovery for the full purchase price of the goods.  As
already indicated, the affidavit avers that the goods or-
dered were to be shipped along with and as part of a
consignment "to Mr. Pooley whose factory was very
close to the factory of the defendant company;" that the
goods never were so shipped and never reached the de-
fendant and that as a consequence there never was a
delivery to the defendant.

It may be conceded as a general principle that where
goods are purchased from a vendor or manufacturer re-
siding at a distance, and where the contract is silent as to
the place or manner of delivery, a delivery to a common
carrier of the goods duly consigned to the purchaser will
be regarded as a delivery to the latter, and the title to the
goods will pass as soon as they are received by the carrier.
But it is also true that delivery is a question of intention,
that if the contract between buyer and seller provides for
a delivery at the place of destination, then a delivery to
the carrier will not be regarded as a delivery to the pur-
chaser and the title to the goods will remain in the vendor
until an actual delivery at the place mentioned in the con-
tract takes place.  In Dannemiller v. Kirkpatrick, 201
Pa. 218, Mr. Justice MESTREZAT, after describing the
general conditions under which delivery to a carrier will
be regarded as a delivery to the vendee, goes on to state:
"This rule, however, does not obtain where the parties
have otherwise stipulated in their agreement.  If it is the
intention of the parties, and it so appears from the con-
tract, that delivery is to take place at the destination of
the property, and that the title is to remain in the con-
signor until that time, then delivery to the carrier does
not divest the title of the vendor to the property, etc. . . . .

It, therefore, becomes a question in cases of this character as to where the delivery of the goods is to be made and when the title is to pass to the purchaser. If the facts are not in dispute it is a question of law for the court, but if the evidence is conflicting the question must be determined by a jury."

Turning then to the written order upon which this action is founded, we find the only reference to the place or manner of delivery is contained in the following words: "60 c. ℔. del'd here." If, as contended for by the appellees, the expression quoted had no reference to the place and manner of delivery but was intended merely to indicate that the price to be paid was to include the cost of carriage, then the written order is silent as to the place or manner of delivery and the agreement of the parties on that subject would be matter for proof on the trial. At this stage of the case we must take the averments of the affidavit as if they had been established by evidence and therefore we must conclude that as the parties had agreed how the goods should be delivered, title would not pass by their delivery to a common carrier in Belgium or at the port of entry in this country, but the contract would remain executory until delivery had taken place in the manner specified in the contract. If therefore there was an unjustifiable breach of an executory contract by the defendant, the measure of damages would be the difference, if any, between the price agreed to be paid and the market value of the goods at the time and place of the breach.

We are of the opinion therefore that as the record now stands the defendant has filed an affidavit sufficient to prevent a summary judgment for the purchase price of the goods and that the cause should have gone to trial in order to determine what the contract really was as to the time, place and manner of delivery of the goods mentioned in the order.

Judgment reversed and a procedendo awarded.