# CASES

IN

# THE SUPREME COURT

OF

## PENNSYLVANIA.

EASTERN DISTRICT, PHILADELPHIA 1879.

### Philadelphia and Reading Railroad Company
#### *versus* Wireman,

1. Where goods are left with a common carrier to be delivered to the consignee without any qualification or restriction, the consignor parts with the goods and all control over them, and cannot, by a subsequent direction to the carrier, prevent their delivery to the consignee, unless such facts are shown as will justify the stoppage of the goods *in transitu*.

2. Where, having given such subsequent direction, the carrier, notwithstanding, delivered the goods to the consignee, and in consequence thereof the consignor sues and obtains a judgment against the carrier in another state for a misdelivery of the goods, this will not avail in a suit by the carrier against the consignee.

January 6th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Error to the Court of Common Pleas, No. 1, of *Philadelphia county* : Of July Term 1875, No. 121.

Case by the Philadelphia and Reading Railroad Company against Jacob ·Wireman, to recover the value of a car-load of doors and shutters, which were misdelivered by plaintiff to defendant.

The facts, in substance, were these: In November 1871, J. G. Fisler purchased of Spaulding & Son, of Elmira, the merchandise in question, which was to be paid for in Wireman's paper, endorsed by Fisler. The price of the car-load was to be $1427. The goods were to be delivered in Elmira, the freight to be paid by the consignee. On November 21st 1871, Spaulding & Son delivered the

(264)

goods to the Lehigh Valley Railroad Company at Elmira. Their order was simply to forward them to Wireman, at the Philadelphia and Reading Railroad station, at Philadelphia. At the same time they wrote to Fisler, sending him a bill for the goods, the receipt of the Lehigh Valley Railroad Company, and a draft for Wireman's acceptance and Fisler's endorsement. On the day the goods were shipped Spaulding telegraphed to Philadelphia to know whether Wireman or Fisler were good for $2000, at sixty days, and received an answer that both were "dead beat." Spaulding & Son then had another receipt made out by the railroad company, which made the goods deliverable to their own order. The same night the elder member of the firm went to Philadelphia, and the next morning called on Fisler and Wireman and asked for additional security, which they refused to give. Spaulding then left orders at the Reading Railroad office to deliver the goods to Hough & Parmenter, and returned to his home in Elmira. On the 22d of November the Lehigh Valley Railroad Company delivered the goods to the Reading Railroad Company at East Penn Junction, where the two roads connect. The invoice was marked "J. Wireman, Kensington Avenue and Reading Railroad, Philadelphia. Deliver only on the order of H. C. Spaulding & Son, Elmira." The car was forwarded to Philadelphia with this restriction noted in the way-bill. Fisler having received notice of the arrival of the goods, resold them to Wireman, receiving $500 on account, and gave Wireman the memorandum of shipment, the invoice of Spaulding & Son, and the Lehigh Valley Railroad's receipt, which he had received. Wireman taking them, presented them to the agent of the Reading Railroad Company, at Richmond, paid the freight, and received the goods. Spaulding & Co., having returned the note of Wireman, then brought suit, in Elmira, against the Reading Railroad Company for the value of the goods, and recovered a judgment therefor, which the company paid, and then brought this suit against Wireman. There was nothing to show that Fisler was insolvent at the time of the purchase.

At the trial, before Pierce, J., the defendant made the following offer : "To show that one J. G. Fisler purchased these goods from Spaulding & Son, of Elmira, with directions to consign them to Jacob Wireman, of Philadelphia; that they were so consigned; that the point of delivery was on the cars at Elmira ; that Wireman has paid about $500 on account of the goods ; that Spaulding & Son were to take Wireman's paper, and that it was sent to Spaulding by Fisler for $1427 ; that Fisler received from Spaulding & Son a receipt or bill of lading for these goods, given by the Lehigh Valley Railroad Company—such receipt, however, not containing any order of H. C. Spaulding & Son—and delivered it to Wireman, and that the goods were delivered by the railroad company plaintiff on production of that receipt."

[Philadelphia & Reading Railroad Co. *v.* Wireman.]

The plaintiff objected, but the court admitted the evidence, and noted an exception.

In the general charge, the court, inter alia, said:

" There was no qualification put upon this receipt. If the transaction rested there, the minute the goods were put on the cars and the receipt issued and transmitted to Wireman, Spaulding & Son had so far parted with the goods as to lose control of them or a right of recaption, except by what is known as the right of stoppage *in transitu*: that is the right to stop them before reaching the consignee, if he should become insolvent. Suppose the goods had been shipped by Spaulding to Fisler, and were on their way to Philadelphia, and Spaulding & Son learned that Fisler was insolvent. Spaulding would have a right to stop them. This is an established rule of mercantile law. That brings up the question whether there was any evidence of insolvency of either Fisler or Wireman which would give them a right to stop the goods. If you should not find evidence of insolvency, they had no right of stoppage *in transitu*, and could not qualify the shipment by directing the same to their order after the goods passed from their control.

"If you should find on this point that there was no right in Spaulding to stop *in transitu*, in consequence of Fisler's insolvency, the next point will be—was there a qualified delivery at Elmira? If you find there was an unqualified shipment at Elmira, and Spaulding had no right of stoppage *in transitu*, then Mr. Wireman had a right to receive the goods from the railroad company, and there was nothing to prevent his receiving them from the company. If that be the state of the facts Mr. Wireman had a right to receive the goods, and was not liable to anybody but Fisler.

"If, however, Spaulding had a right of stoppage *in transitu*, or if the goods were shipped in the first instance in this qualified manner, the defendant had no right to them, and would be liable to the Philadelphia and Reading Railroad Company, but not otherwise. This covers the whole case."

Verdict for defendant, and after judgment thereon, plaintiff took this writ, assigning for error the admission of the evidence above mentioned, and the portions of the charge noted.

*Thomas Hart, Jr.*, for plaintiff in error.—The case should have been decided, not upon what was done at Elmira, but upon what Spaulding had the right to do. What took place between Fisler and Spauldings had nothing to do with the case, because the liability of the Reading Railroad Company depended not upon the contract made at Elmira, but upon the contract between the first and second carriers at East Penn Junction. The question was simply as to the contract between Spaulding and the railroad company. The court was wrong, therefore, in submitting the question whether the shipment was qualified or unqualified.

[Philadelphia & Reading Railroad Co. *v.* Wireman.]

It cannot be doubted that the Lehigh Valley Railroad Company delivering the goods at East Pennsylvania Junction, the end of its railroad, to the plaintiff, acted as Spauldings' agent to direct the next carrier what to do with them, and that the Philadelphia and Reading Railroad Company did then and there contract with Spauldings to do a particular thing—to deliver only upon their order. The first carrier is the agent of the shipper, and the receipt of the second company is the only contract between the shipper and the second carrier: Camden and Amboy Railroad Company *v.* Forsyth, 11 P. F. Smith 81.

The papers delivered at East Pennsylvania Junction all contained the direction, "Deliver only on order of H. C. Spaulding & Son, of Elmira." These fixed the engagement of the plaintiff to Spauldings, whatever was the contract between the latter and Fisler. Such a shipment is, in itself, a proper one, and must be observed by a carrier who receives such a direction.

The evidence shows that the Spauldings had no intention to deliver unqualifiedly, and without that intention the delivery was incomplete: Susquehanna Boom Co. *v.* Finney, 8 P. F. Smith 200. The question of the completeness of the delivery is for the jury: Wenger *v.* Barnhart, 5 P. F. Smith 300.

*Rufus E. Shapley*, for defendant in error.

Mr. Justice Sterrett delivered the opinion of the court, January 20th 1879.

The plaintiff's claim, as appears by the bill of particulars, was based on the unauthorized delivery of the goods consigned to the defendant Wireman. Hence, the main question was, whether the latter had a right to receive them at the time they were delivered to him by the plaintiff's agent. To show that he had not, the plaintiff mainly relied on the qualification and direction contained in its way-bill, to "deliver only on the order of H. C. Spaulding & Son, of Elmira." Resting upon this alone, the delivery to Wireman, without the order of Spaulding & Son, would have been unauthorized; but the testimony adduced by the defendant tended strongly to prove that Fisler had purchased the goods from Spaulding & Son, to be delivered at Elmira, consigned to Wireman, and to be paid for in the negotiable paper of the consignee, endorsed by Fisler; that, pursuant to agreement, the goods were delivered at Elmira to the Lehigh Valley Railroad Company, whose receipt, for their delivery to Wireman at Philadelphia, *without any qualification or restriction*, was taken by Spaulding & Son, and immediately sent by them to Fisler in a letter, advising him of the shipment and enclosing draft for the amount to be accepted by Wireman, endorsed by Fisler and remitted to the consignors; and that on the arrival of the goods in Philadelphia, Wireman, who had agreed to purchase them from

Fisler, presented the receipt of the Lehigh Valley Railroad Company, paid the freight and received the goods. If these facts were found by the jury, as they doubtless were, from the testimony submitted to them, they constituted a complete answer to the alleged want of authority in Wireman to demand and receive the consignment. The learned judge was therefore clearly right in receiving the testimony and submitting it, as he did, to the jury.

The testimony fairly justified the inference that after Spaulding & Son had taken the receipt of the Lehigh Valley Railroad Company, and mailed it to Fisler, they doubted the solvency of Wireman and Fisler, and induced the company to restrict the delivery to the consignee, by adding to the bill of lading the words above quoted, and when the goods were transferred to the plaintiff company, at Allentown Junction, the same direction was inserted in its way-bill. But neither Fisler nor Wireman was a party to this change in the terms of shipment, and were not bound by it. If the goods were purchased and delivered at Elmira, as contended by the defendant, the title had passed from Spaulding & Son and vested in the purchaser. After an unqualified delivery to the carrier at Elmira they were no longer at the risk or under the control of Spaulding & Son, and they had no right to say that, on reaching their destination, they should not be delivered to the consignee without their order. If the plaintiff company had refused to deliver the goods on presentation of the receipt and tender of the freight by the consignee, he could have sustained replevin by proving the facts which the jury must have found under the instructions of the court in this case.

There may be apparent hardship in the failure of the plaintiff to recover, after having been sued by the consignors, in the state of New York, for misdelivery of the goods, and compelled to pay the value thereof; but with this we have nothing to do. It may be that the right of the consignee to receive the goods, was not urged or sustained in that case as it was in this. In the present case, as we have seen, the action was based exclusively on the ground that the consignee had no right to receive the goods without the order of the consignors, a position which the plaintiff failed to maintain. Perhaps the result might have been different if the action had been in the name of the consignors to the use of the railroad company. As it was, however, the case hinged on the question of Wireman's authority to receive the goods. The facts were for the jury, and the testimony, submitted to them with appropriate instructions, fully justified the verdict.

                                        Judgment affirmed.