# Substantial Building and Loan Association, Appellant, v. Northern Central Trust Company.

*Negotiable instruments—Checks—Building and Loan Association— Negotiation by Treasurer—Authority of.*

In an action of assumpsit by a Building and Loan Association against a bank for the alleged improper cashing of two checks, it appeared that the checks were made payable to the association and endorsed by its Treasurer, who later appropriated the money to his own use. It further appeared that is was the duty of the Treasurer to secure and take charge of all moneys of the association; that checks drawn on the association's bank account were required to bear the signature of two other officers and that there was no notice to the bank of any prohibition on the Treasurer to collect the checks in money nor any restriction on his control of funds not deposited.

Under such circumstances, judgment was properly entered for the defendant.

Argued October 19, 1925. Appeal No. 165, October T., 1925, by defendant, from judgment of C. P. No. 2, Philadelphia County, December T., 1924, No. 3775, in the case of Substantial Building and Loan Association, a corporation, v. Northern Central Trust Company, a corporation. Before PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Affirmed.

Assumpsit to recover proceeds of checks cashed by defendant.   Before STERN, P. J.

The facts are stated in the opinion of the Superior Court.

Defendant filed an affidavit of defense raising certain questions of law.

The court entered judgment for defendant on the pleadings.   Plaintiff appealed.

*Error assigned,* among others, was the entry of judgment by the court.

*Albert L. Moise,* and with him *Henry A. Craig,* for appellant.

*Wm. E. Caveny,* for appellee.

OPINION BY HENDERSON, J., April 30, 1926:

The validity of the two checks described in the plaintiff's statement of claim, and the fact that they were paid by the drawee bank are admitted.   We held in an action brought by the plaintiff to recover on one of the same instruments from the drawee bank (82 Pa. Supr. Ct. 211; and 84 Pa. Supr. Ct. 133) that they were regularly indorsed by the treasurer of the plaintiff company, and that payment thereof by the latter bank discharged it from further liability.   The plaintiff now admitting the authority of its treasurer to indorse, asserts that the defendant had no right to pay to its treasurer the money called for by the checks. It undertakes to establish this contention by one of its bylaws and an oral notice said to have been given to the defendant a short time before the treasurer obtained the money.   The bylaw referred to is in the following terms:

> "The duties of the Treasurer shall be to receive and take charge of all moneys paid into the Association, to deposit the same in a bank to be

designated by the Board of Directors, to pay all orders drawn on him by order of the Board of Directors, if signed by the president and attested by the secretary; he shall receive and hold in trust for the Association all Mortgages, Bonds, Policies of Insurance, Securities, etc., upon all properties upon which money has been loaned by the Association; he shall give a corporate bond in a sum to be fixed by the Board of Directors for the faithful performance of his duties before entering thereon, and shall renew the same whenever required to do so by the Board of Directors, and at the expiration of his term of office he shall deliver to his successor in office, all moneys, books, and papers in his possession belonging to the Association.''

The oral notice is set forth in the 6th paragraph of the statement of claim in the following form:

"On or about May 12, 1922, plaintiff gave to defendant oral notice that all checks drawn upon the funds of plaintiff must bear the signatures of the three officers of plaintiff, to-wit, those of the president, secretary, and treasurer." * * *

The defendant had been for two months or more the depository of funds of the plaintiff, and the oral notice as alleged, was given to it because of that relation. Gesing, the plaintiff's treasurer, having indorsed the checks, obtained the money thereon, and, as claimed by the plaintiff, appropriated the same to his own use, and never paid any part thereof to the plaintiff. It may be assumed that the treasurer was the general financial officer of the plaintiff as it was not shown that any other official was empowered to exercise any of the functions usually committed to a treasurer. He had therefore, authority to receive

and take into his custody funds payable to the association, and this he could do by endorsement of the checks, as well as by acceptance of cash from a debtor. (Strong v. Building & Loan Assn. 189 Pa. 406.) To enforce the liability sought to be established by this action, it is incumbent on the plaintiff therefore, to show some limitation of the authority of its treasurer to collect its checks, and that the defendant knew or was presumed to have knowledge of that limitation. This it contends is found not in a lack of the general authority of the treasurer, but in the declaration of his duties contained in Section 4 of the bylaws, above quoted. The bylaw as we read it, has not the scope sought to be given it in the appellant's claim. It gives to the treasurer full authority to receive and take charge of all moneys paid into the association. It further requires the incumbent at the expiration of his term of office, to deliver to his successors "all moneys" in his possession belonging to the association. The language does not express a prohibition of the treasurer to collect a check in money. It enjoins on him usual duties of such an official, and for the faithful performance of these duties he was required to give security; but it would be an unwarranted construction of the bylaw to hold that the officer was forbidden to convert a check into money. Stress is laid on that provision of the section which requires the treasurer "to pay all orders drawn on him by order of the board of directors if signed by the president and attested by the secretary," but this applies to an entirely different duty from that of the receipt of money. It is not stipulated that the treasurer shall pay all claims by check, and for aught that appears in the bylaw, he might do so with funds in his possession. But if we concede that his authority is restricted to payment by checks, that would relate only to funds on deposit in the bank and would not be a restriction of his authority to exchange a check

for money; and this was the view of the learned judges of the court below, as shown in the opinion on the motion for reargument. We are unable to hold that the transaction between the treasurer and the bank was the depositing of the funds of the plaintiff in the bank; it was not intended either by the treasurer or the bank that it have that quality. The association obtained no credit in its account with the defendant, nor did it transfer any property from its custody to the bank. Its misfortune is, that it had an untrustworthy treasurer, but for that the defendant is not responsible.

It is further to be said that if the authority of the treasurer was less than that which his title implies, there is no evidence of notice to the defendant to that effect. The most that is claimed on that subject is that the bank had notice that all checks drawn on funds standing to the credit of the plaintiff "must bear the signatures of the three officers of plaintiff, to-wit, those of the president, secretary and treasurer." But that contains no information to the defendant as to the control which the treasurer may exercise over funds not deposited. It is clear that the proceeds of the two checks came into the possession of the treasurer of the plaintiff and therefore were subject to the control of the plaintiff's officer. Nothing exhibited in the case permits us to hold that the defendant is in any way legally responsible for the failure of that officer to fully perform his duty. When the fact is judicially established that the indorsement and transfer of the checks was regular, the exemption of the defendant from liability is established in the absence of evidence that it violated a duty. Clearly it was not bound to assume that the treasurer would become a defaulter; nor having received checks at the counter for exchange into money, was it under obligation to hold them when they were not offered for deposit and credit.

The decisions cited by the learned counsel for the appellant are not contradictory of the conclusion arrived at. They are, with two exceptions, from courts of other states, and present two classes of questions: (1) Indorsement of checks by persons without authority so to do; and (2) the indorsement of checks by officers or agents of corporations and deposited to the credit of such depositors with the knowledge of the bank receiving the deposit that the fund so credited to the depositor was the property of the payee named in the check. The case most relied on is Graham v. Southington Bank & Trust Co. 99 Conn. 494, which is said by the appellant to present facts "very similar to facts in the case at bar." There is a controlling distinction, however, between that case and the one now before us. There the indorsement was by an agent not an officer of the corporation. His only authority was to indorse checks for deposit. The case turned on the fact that the agent neither expressly nor by implication was authorized to do more than indorse the checks to the credit of his employer. He had no official position which gave rise to any implication of authority to do more than he was actually authorized to do. The court in disposing of the case took notice of the fact that the employe was not a general agent of the plaintiff. It clearly appears that the case was decided on the ground that there was nothing in the transaction to give color of authority in the company's employe to receive money for his employer.

In Dennis Metal Manufacturing Co. v. Fidelity Union Trust Company, 123 Atl. Rep. 1614. N. J., the president of the Corporation indorsed checks payable to the order of the corporation and deposited them in his account in the defendant bank and did not account to the corporation for the proceeds of the checks. It was there held that the president not only had no authority to indorse a check, but the bank, having

notice that the money of the corporation was being misapplied to the president's account, could not defend successfully in an action to charge it with the amount of the fund so misappropriated. The same character of transaction was presented in Wagner Trading Company v. B. P. National Bank, 228 N. Y. 37, where the by-laws of a corporation required checks indorsed by the president to be countersigned by another officer of the corporation. Some of the checks were indorsed by the president without the required countersigning and were deposited, not to the credit of the corporation, but to the individual account of the president, and the proceeds were afterwards paid out on the personal checks of the president.

In Palo Alto Mutual Building & Loan Association v. First National Bank of Palo Alto, 33 Cal. App. 214, checks were indorsed by the secretary of the corporation and the defendant bank gave the secretary part of the proceeds in cash and credited the balance on two personal obligations. Both by reason of the lack of authority to indorse and because the amount of the checks was in part credited to the personal account of the cashier, the bank was made liable. The soundness of these decisions cannot be questioned, but they rest on facts unlike those involved in the appellant's case. It is manifest that there must have been authority to indorse checks, and that the appropriation of money belonging to a corporation by a bank to the private account of an individual officer or employe of the corporation, without express authority so to do, would be a fraud on the corporation. The cases are not authority in support of the plaintiff's contention on the facts disclosed by the evidence before us.

We are in accord with the conclusion of the learned judges of the court below and therefore affirm the judgment.