Pennsylvania Railroad Company, Appellant, *v.* Brownstein.

Argued March 26, 1956. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and CARR, JJ.

*F. Hastings Griffin, Jr.,* with him *Barnes, Dechert, Price, Myers & Rhoads,* for appellant.

*William L. Matz,* with him *Zoob & Matz,* for appellees.

OPINION BY RHODES, P. J., October 3, 1956:

This is an action of assumpsit in which the jury rendered a verdict for defendants. The court below re-

fused plaintiff's motions for judgment n.o.v. and a new trial. Plaintiff has appealed from the judgments entered on the verdict.

Plaintiff, The Pennsylvania Railroad Company, brought this action against Albert Brownstein and Bernard Brownstein, and Girard Sales, Inc., to recover the value of six refrigerators alleged to have been misdelivered to them.[1]

In considering the court's refusal of plaintiff's motion for judgment n.o.v., it is necessary that we view the record in the light most favorable to defendants, resolving all conflicts therein in their favor, and giving them the benefit of every reasonable inference of fact arising from the evidence. *Stoner v. Penn-Brixite, Inc.,* 177 Pa. Superior Ct. 189, 191, 110 A. 2d 904. In so doing we find that the evidence indicates the following facts: In August, 1948, defendants ordered seven refrigerators from the United Sales and Equipment Company, Wichita, Kansas. The order was given by telephone to Granville O'Neal, a representative of the seller. There had been previous dealings between the two firms through O'Neal. On this occasion it was agreed that defendants would remit the purchase price of the refrigerators to a bank in Wichita through the Philadelphia National Bank, and that the same was to be paid to the seller upon presentation of a bill of lading, together with an invoice, showing that the goods had been shipped. A letter of confirmation was received by defendants and the purchase price was forwarded and paid to the seller in Wichita. Thereafter

---

[1] The two defendants were trading as Girard Sales Company at the time the misdelivery is alleged to have been made. When action was instituted by plaintiff the partnership had apparently been dissolved and Girard Sales, Inc., was then in existence. Plaintiff accepted a nonsuit as to the corporation in the absence of proof that it had assumed the liabilities of the partnership.

defendants received an order bill of lading from the Philadelphia National Bank, which they forwarded to their office in New York in order that the refrigerators could be obtained from the plaintiff railroad upon arrival. The bill of lading named the United Sales and Equipment Company both as consignor and consignee, with defendants as the notify party. It was endorsed in blank by O'Neal for the United Sales and Equipment Company. An employe of defendants was notified that the refrigerators had arrived, whereupon a truck was sent to plaintiff's station to receive them. The bill of lading was duly presented and six of the refrigerators were obtained; the seventh was of a description not present in the shipment. In addition to the bill of lading for the seven refrigerators, it appears that there was also outstanding an order bill of lading which was identical with the other except that it covered sixteen refrigerators instead of seven. The refrigerators involved were not identified by serial numbers in either of the bills of lading;[2] they were described as "#S-803-A Kerosene Servel" refrigerators.

It is not clear from the record who had possession of the bill of lading for the sixteen refrigerators at the time of delivery of the six refrigerators to defendants. Defendants were unaware of its existence. There is no doubt that they had ordered at least six of the type which were delivered to them, and that the purchase price for seven items was paid to the company shipping the goods.

Plaintiff attempted to prove that the delivery was made to defendants from the shipment of sixteen refrigerators, and that they were not entitled to posses-

---

[2] Counsel for plaintiff stated on the record: "I have to prove Harpool Bros. owned the refrigerators, and in order to prove he owned these refrigerators, I have to show the numbers."

sion of any of the refrigerators at that time. Evidence was also introduced to the effect that plaintiff had paid a claim of the alleged owner for misdelivery of the goods.

In the instant proceeding plaintiff based its cause of action upon the common law and the Act of June 8, 1881, P. L. 86, §1, 6 PS §3, which provides in part as follows: "Any carrier or other bailee of property, who has parted with its possession by mistake to any person not entitled to the possession, may, after demand, maintain . . . if the property cannot be found, an action of assumpsit . . . against the party converting or removing it." There may be some doubt that this Pennsylvania statute is applicable as the goods were not shipped from this state or delivered therein. However, this is probably immaterial as the Act expresses the general rule (see 13 C.J.S., Carriers, §173), and it is essentially the same as the rule in the state of New York, the situs of the delivery. See *Pennsylvania Railroad v. Tozzi*, 124 Misc. 310, 207 N.Y.S. 16, 18; *New York Central Railroad Company v. Muszalski*, 252 App. Div. 251, 299 N.Y.S. 45, 46.

In order for plaintiff to prevail, it was necessary that the jury conclude that defendants were not entitled to possession at the time of delivery. In this respect it is contended that a superior right to possession was shown by the evidence to have been in a third party; and that the bill of lading, upon presentation of which delivery was made, was forged and therefore gave no possessory interest to defendants. At the trial plaintiff introduced the depositions of one George Harpool which were to the effect that Harpool Bros., Wichita, Kansas, were the owners of the goods at the time of shipment. But the witness did not establish the basis for such ownership except to say that at the time of the hearing he had the original bill of lading

for sixteen refrigerators in his possession. He was equivocal concerning the ownership at the time of delivery to defendants. He admitted that the refrigerators were sold to defendants but testified that they had refused the shipment. Defendants' evidence indicated that they had no knowledge of the shipment of sixteen refrigerators, and that they had ordered only seven. If the jury believed this evidence it could infer that Harpool was erroneously informed that the shipment was refused. It is significant that Harpool knew of the interest of defendants and that this interest had been created by their dealings with the United Sales and Equipment Company. Nevertheless, Harpool offered no explanation of the relationship which existed between his firm and the United Sales and Equipment Company, the named consignor, consignee, and endorser of both bills of lading; and no explanation appears elsewhere in the record. Another witness for plaintiff, a clerk who prepared the bill of lading for sixteen items, testified that the shipment was made by the United Sales and Equipment Company. He made no mention of Harpool Bros. The bills of lading were prima facie evidence that the United Sales and Equipment Company was the shipper and the consignee. *Robinson Electrical Co., Inc., v. Capitol Trucking Corporation,* 168 Pa. Superior Ct. 430, 433, 79 A. 2d 123. As consignee it could negotiate the bills, which it apparently did. Defendants obtained one of the bills of lading in the normal course of business; the manner in which Harpool Bros. obtained the other is obscure. Although the facts stated in the bills of lading were subject to contradiction, the evidence offered by plaintiff was not positive, certain, and unequivocal relative to the title of Harpool Bros. (*Wagner v. Somerset County Memorial Park, Inc.,* 372 Pa. 338, 341, 93 A. 2d 440), and we must treat the verdict as indicative of the jury's

rejection of this evidence. Conjecture cannot replace competent evidence. *Lanni v. Pennsylvania Railroad Company*, 371 Pa. 106, 110, 88 A. 2d 887.

Concerning the alleged forgery, plaintiff offered in evidence, over objection, the record of O'Neal's plea of guilty in the United States District Court for the District of Kansas to indictments charging forgery and uttering a forged bill of lading. This record was offered to establish that O'Neal "admits he forged this document." Assuming this record had the same effect that testimony by O'Neal would have had, it nevertheless was entitled only to be weighed with the other evidence, and the jury could give it such consideration as the circumstances warranted.

Plaintiff also introduced in evidence, over objection, a technical admission by defendants under Pa. R. C. P. No. 4014 that the bill of lading was forged. This admission is not necessarily conclusive of the issue of whether or not defendants were entitled to possession of the goods at the time of delivery. Other circumstances which were present indicate that such issue cannot be determined inevitably on a single facet of the case. Although the admission was entitled to consideration by the jury (cf. *Dougherty v. Pennypack Woods Home Ownership Association*, 181 Pa. Superior Ct. 121, 128, 124 A. 2d 703), there was other evidence relevant to the issue of possession which would support the verdict. See *Trostel v. Reading Steel Products Corporation*, 152 Pa. Superior Ct. 273, 278, 279, 31 A. 2d 909; *Ondo v. Greek Catholic Union*, 155 Pa. Superior Ct. 492, 499, 500, 38 A. 2d 370. The evidence presented by defendants showed that the bill of lading was obtained in the normal channels of trade from the United Sales and Equipment Company, the shipper, the seller, and the recipient of the purchase price paid by defendants. O'Neal was the authorized representative of the

United Sales and Equipment Company and by virtue of prior bona fide dealings defendants could rely upon his authority to act on its behalf. See Restatement, Agency, §165. The record fails to disclose that defendants knew or should have known that O'Neal may have been using his position on this last occasion for his own fraudulent purposes as plaintiff contends. Between United Sales and Equipment Company and defendants, O'Neal had at least the apparent authority to act as he did. *Substantial Building and Loan Association v. Real Estate Title Insurance & Trust Company of Philadelphia*, 82 Pa. Superior Ct. 211, 214; *Substantial Building and Loan Association v. Northern Central Trust Company*, 88 Pa. Superior Ct. 10, 13, 14. There was no intervening innocent holder of either bill of lading at the time of delivery to defendants. It is permissible to conclude that Harpool Bros. had been eliminated as we have previously indicated. The only other parties having any possible right to possession at the time of delivery were the United Sales and Equipment Company and defendants; and on the basis of the agency of O'Neal defendants would have the superior right.

It appears, for these reasons, that the jury could believe that defendants had ordered seven refrigerators and made payment therefor to the company which shipped sixteen by mistake or as the result of the manipulations of O'Neal, the shipper's agent. It was also reasonable for the jury to find that defendants acted in good faith; that no other innocent party intervened who might have a superior claim to the goods; that the delivery made by plaintiff was intentional and in accordance with the purpose of the shipper. We think that, under the circumstances, judgment n.o.v. was properly refused. The case of *Long Island Railroad Company v. Structural Concrete Company*, 59 Misc. 167, 110 N.Y.S. 379, 380, is similar on its facts to the

instant case, and the court there reached the same result. See, also, *Philadelphia and Reading Railroad Company v. Wireman,* 88 Pa. 264, 267, 268.

Although we conclude on the record before us that judgment n.o.v. was properly refused, we are of the opinion that a new trial should have been granted because of certain errors in the charge of the trial judge. As a whole, the charge must have been confusing to the jury in many respects. The essential factual issue concerned the right to possession of the goods, and this involved several subsidiary issues. From an examination of the charge, however, it appears that these issues were obscured by the submission of a number of irrelevant matters which tended to detract from the determinative issues. For instance, the judge submitted to the jury the question of the delay or laches of plaintiff in notifying defendants of the alleged misdelivery. Apparently the intention of the trial judge was to have the jury determine whether defendants were harmed as a result of the delay. As this is an action of assumpsit it is governed by the statute of limitations and not by the equitable doctrine of laches. The defense of laches, moreover, was not pleaded by defendants. See Pa. R. C. P. Nos. 1030, 1032; *Lang v. Recht,* 171 Pa. Superior Ct. 605, 608, 91 A. 2d 313; *Martin v. Wilson,* 371 Pa. 529, 533, 92 A. 2d 193. If it could be said that the failure of defendants to plead laches was cured by plaintiff's producing evidence of a delay in its own case (see *Nevling v. Commercial Credit Company,* 156 Pa. Superior Ct. 31, 36, 37, 39 A. 2d 266), there is nothing to indicate that the delay was unreasonable or in what manner defendants may have been prejudiced thereby. *Lehner v. Montgomery,* 180 Pa. Superior Ct. 493, 501, 502, 119 A. 2d 626. There was no proof that defendants could have reduced any damage that might have been sustained if prompt notice had been given. Fur-

thermore, the trial judge erred in submitting to the jury the question whether plaintiff had paid the claim of Harpool Bros., as the purported owner, because of any duress. This was entirely foreign to the issue involved in this litigation. *Philadelphia and Reading Railroad Company v. Wireman,* supra, 88 Pa. 264, 268. Consequently, it was not proper to submit it to the jury, and we cannot speculate on the effect which this and other irrelevant issues may have had upon the verdict. The motion for new trial should have been granted. See *Shugat v. Metropolitan Life Insurance Company,* 153 Pa. Superior Ct. 51, 56, 33 A. 2d 650.

Judgments in favor of defendants are reversed, with a venire facias de novo.