In the Matter of: Churchill Area School District and Pennsylvania Labor Relations Board and Churchill Area Education Association, PSEA/ NEA, Union for Employees. Churchill Area School District, Appellant.

Argued May 5, 1977, before Judges KRAMER, MEN- CER and ROGERS, sitting as a panel of three.

*J. Robert Maxwell,* with him *Maxwell & Huss,* for appellant.

*John R. DeAngelis,* for appellee.

*Raymond W. Cromer,* with him *James L. Crawford,* and *Forest N. Myers,* for Pennsylvania Labor Relations Board.

OPINION BY JUDGE ROGERS, June 6, 1977:

In November 1970, the Pennsylvania Labor Relations Board (PLRB) certified the Churchill Area Education Association (Union) as the exclusive representative for the full-time and regular part-time teachers, guidance counselors, home and school visitors, nurses and librarians of the Churchill Area School District (Employer). On March 18, 1974, the Union filed a Request for Unit Clarification with the PLRB seeking an order that the employe unit just described should be expanded to include the Coordinator of Athletics, a position which had existed since prior to November 1970. The PLRB, after hearing, granted the Union's Request and the Court of Common Pleas of Allegheny County affirmed. The Employer has appealed.

The Employer has resisted the Union's application on two principal grounds, first that the Union's Request for Unit Clarification was untimely made, and second, that the position of Coordinator of Athletics

of the Employer is either managerial or supervisory and hence may not under PERA be included with a unit of rank and file public employes.[1]

The Employer's attack on the Union's request as untimely is based on Section 1505 of the Public Employe Relations Act (PERA), Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §1101.1505, which provides:

> Petitions filed under this act shall be heard expeditiously and, if possible, within ten days after they have been docketed. No petitions or charges involving questions arising under clause

---

[1] The Employer also says that the Union's application should be dismissed on the "equitable principles of laches, estoppel and waiver." Laches and estoppel in pais are indeed equitable defenses. The operation of the doctrine of laches depends not only on the passing of time but also on prejudice resulting or which might result from the delay. *Thomas v. Waters*, 342 Pa. 125, 18 A.2d 872 (1941). Estoppel in pais prevents a person from changing his position only when the party claiming the benefit of the principle has been prejudiced as the result of reliance on the conduct of the adverse party. *Sensinger v. Boyer*, 153 Pa. 628, 26 A. 222 (1893). We find no evidence here that the Employer has been prejudiced by the fact that four years passed between certification and the Union's request that the Coordinator of Athletics be included in the unit.

We know of no equitable principle of waiver. Waiver simply means the knowing relinquishment or abandonment of a right, privilege or immunity and is applied in a large variety of circumstances in common law, equity and statutory proceedings. There is no evidence here other than the position's existence that the Union first laid any claim to the Coordinator of Athletics, much less that it knowingly abandoned any right that the position be included in its unit.

Furthermore, while administrative discretion should be exercised in equitable fashion, the equitable doctrines of laches and estoppel in pais are not for application in administrative proceedings just as they are not for application in actions at law. *See Pennsylvania R.R. Co. v. Brownstein*, 182 Pa. Superior Ct. 65, 125 A.2d 618 (1956).

(2) of subsection (a) of section 1201 of Article XII shall relieve the board of determining any questions arising under sections 603, 604 and 605 of Article VI immediately, and in their regular and normal order, and the making of a certification thereon if such is warranted. *No petition or charge shall be entertained which relates to acts which occurred or statements which were made more than four months prior to the filing of the petition or charge.* (Emphasis added.)

The Employer says that the phrase to which we have given emphasis forbade the PLRB to entertain the Union's Request for Clarification because the 1970 certification involved the issue of whether the Coordinator of Athletics should have been included in the Union's unit and that the Request therefore relates to acts which occurred more than four months prior to the filing of the Request. The PLRB and Union respond by asserting first, that the phrase depended on by the Employer speaks only to charges of unfair labor practices or petitions to enforce PLRB orders relating to charges of unfair labor practices and that it does not apply to other applications such as the Union's Request for Clarification, and second, that the Union's Request does not relate to acts or statements which occurred in 1970 but to current facts concerning the duties of the Coordinator of Athletics. We agree with the second response. The Request for Clarification is in the form of a letter from the Union to PLRB in which the writer says, "I am requesting a unit clarification concerning the position of Coordinator of Athletics *as it currently exists in the School District.*" (Emphasis supplied.) The Request for Clarification was clearly related only to contemporary circumstances. We are not required to, and do not, decide in this case whether the last sentence of Section

1505 applies exclusively to charges relating to unfair labor practices.

As noted, the PLRB order which was affirmed by the court below was that the Coordinator of Athletics should be included in the rank and file unit certified in 1970. The Employer maintained throughout that the Coordinator of Athletics of the Churchill Area School District was either a management level employe or a supervisor and therefore not to be included in the bargaining unit of rank and file employes.[2] At Section 301(16) of PERA, 43 P.S. §1101.301(16), a management level employe is defined as "any individual who is involved directly in the determination of policy or who responsibly directs the implementation thereof. . . ." A supervisor is

[A]ny individual having authority in the interests of the employer to hire, transfer, suspend, layoff, recall, promote, discharge, assign, reward or discipline other employes or responsibly to direct them or adjust their grievances; or to a substantial degree effectively recommend such action, if in connection with the foregoing, the exercise of such authority is not merely routine or clerical in nature but calls for the use of independent judgment.

Section 301(6), 43 P.S. §1101.301(6).

A lengthy hearing was conducted by the PLRB producing more than two hundred pages of testimony. The Union called as its witnesses the present Coordinator of Athletics[3] and the president of the Union.

---

[2] Section 301(2) of PERA, 43 P.S. §1101.301(2) excludes management level employes from the definition of public employe. Section 604(5), 43 P.S. §1101.604(5) tells the PLRB that it may not permit persons at the first level of supervision to be included with other units.

[3] Counsel for the Union says at one place in the record that he called this witness as on cross-examination. The right to do so un-

The Employer called the District's Director of Personnel, a Principal, the Superintendent of Schools as well as the Coordinator of Athletics. All of the witnesses except the Union president believed that the Coordinator of Athletics was a managerial level employe or a supervisor and testified as to matters relating to the position which tended to support their conclusion. In the light of the thorough record made by the parties, PLRB's findings of fact with respect to what the Coordinator of Athletics of the Churchill Area School District actually does are woefully inadequate. The only relevant finding under the heading Findings of Fact is that the Coordinator teaches part of the day and acts as Coordinator during the rest of his time. The following paragraph under the heading of Discussion contains the only other reference to the facts:

> The evidence adduced at the hearing held in the instant case clearly demonstrates that the Coordinator of Athletics in the Churchill Area School District does not have the power, in the interest of the employer to hire, fire, suspend, discharge, transfer, lay-off, recall, promote or reward the employes in the unit. The testimony shows that the Coordinator of Athletics does not hire individuals as coaches. At the most he recommends two or three candidates for vacant positions. The Superintendent then conducts an independent investigation and analysis of the proposed candidates and may or may not concur with the recommendations of the Coordinator of Athletics. This certainly cannot be cate-

---

der Section 7 of the Act of May 23, 1887, P.L. 158, *as amended*, 28 P.S. §381 would seem to have been founded on counsel's belief that the Coordinator of Athletics was an officer of the school district—a concept at least facially inconsistent with the contention that he was not a managerial or supervisory employe.

gorized as giving the Coordinator of Athletics the power to hire and certainly shows that his recommendation is not effective.

This is an unsatisfactory factual review of this record. Four witnesses testified in great detail as to what the Coordinator does; it is not sufficient to record in passing two things he does not do as conclusive of his status.

Furthermore, the PLRB's Decision and Order contains neither findings nor discussion with respect to the Employer's contention that the Coordinator of Athletics is a managerial level employe, despite substantial testimony in this regard by the Superintendent of Schools. It is not this Court's function to find facts or to decide issues raised in PLRB proceedings but ignored in the Board's decision.

ORDER

AND Now, this 6th day of June, 1977, the order of the court below affirming the order of the Pennsylvania Labor Relations Board is reversed; and the record is remanded to the Board for findings of fact, conclusions and order consistent with this opinion.