**WEST ALLEGHENY SCHOOL DISTRICT, Appellant**

v.

**WEST ALLEGHENY EDUCATION ASSOCIATION.**

Commonwealth Court of Pennsylvania.

Argued April 20, 2010.

Decided May 26, 2010.

William C. Andrews, Pittsburgh, for appellant.

Mary Jo Miller and Tiffany L. Casciato, Pittsburgh, for appellee.

Before: LEADBETTER, President Judge, BROBSON, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Senior Judge FRIEDMAN.

West Allegheny School District (School District) appeals from the September 17, 2009,[1] order of the Court of Common Pleas of Allegheny County (trial court), which denied the School District's petition to vacate a grievance arbitration award in favor of a teacher whose request to return to work early from childbearing leave due to a financial emergency was denied. We affirm.

On October 2, 2007, Erin Clay (Grievant), an eighth grade teacher, requested childbearing leave pursuant to Article XVII, Section D of the Collective Bargaining Agreement (CBA) between the School District and the West Allegheny Education Association (Association).[2] In her letter, Grievant stated:

> I am writing concerning my childbearing leave. I am expecting my child on November 9, 2007. I anticipate being able to work up until this date unless my doctor informs me otherwise.
>
> I have 15 days accumulated as of this point and would like to use them all.

---

1. We note that, according to the School District's brief, the School District is appealing a non-existent "October 20, 2008," order of the trial court. (School District's brief at iv & 1.) We further note that the School District's brief fails to comply with Pa. R.A.P. 2111 (requiring that a copy of the trial court opinion be appended to the brief) and Pa. R.A.P. 2115(a) (requiring that the order on appeal shall be set forth verbatim).

2. Article XVII, Section D of the CBA provides, in pertinent part, as follows:

> Female teachers of the [School District] shall be provided with childbearing leave under the following provisions:
>
> 1. At least thirty (30) days prior to beginning of leave, the teacher shall submit a written request for childbearing leave and state her intention whether or not to resume teaching after termination of pregnancy. The request shall include the expected date of return to work. The length of leave shall not exceed one (1) year from the date of the birth of the child.
>
> . . . .
>
> 3. A teacher may return to work when the teacher's physician certifies to the teacher's ability to assume her duties. The teacher shall provide the Board with such certification at the earliest possible opportunity. The teacher shall be scheduled to return to work at the earliest opportunity practicable after the Board's receipt of the certification, but in no case within the last two (2) weeks of a grading period. **A teacher may return to work earlier than her expected date of return in cases of emergency.**
>
> 4. The teacher may use any or all of her accumulated sick days while on childbearing leave.
>
> 5. If the teacher chooses not to use accumulated sick leave or, if her accumulated sick leave expires during the childbearing leave, she shall be permitted to continue any or all fringe benefits available by remitting the costs for these benefits to the Board unless she is eligible for or receiving Family Medical Leave benefits.
>
> 6. On returning to service from childbearing leave, the teacher shall be returned to the same position she occupied prior to the leave. If that position no longer exists, the teacher shall be given another position for which she is properly certified.
>
> (R.R. at 112–13) (emphasis added).

This would enable me to get paid until December 5, 2007. I would then like to receive Family Medical Leave for 60 days and continue to receive the Continuation of Benefits for my family and myself during this time. The date at the end of the 60 days would be on or about March 11, 2008.

I am asking to extend this leave until November 9, 2008, and realize that I would be responsible for paying my benefits until this time. I realize that I would have to submit a request to the School Board **if I need to return to work earlier due to financial obligations.**

My husband is a salesman and works on commission, so I am not sure how long I will be able to take off to raise my three children. I am sorry to be so vague on my time of return, **I just don't know where we will be financially speaking. It is a possibility that I will have to return to work earlier.** Thank you for your time!

(Arbitrator's Award at 12–13, R.R. at 41–42) (emphasis added). The School District approved the request.

On April 9, 2008, Grievant requested that the School District permit her to return to work on May 14, 2008, due to financial obligations. On April 17, 2008, the School District notified Grievant that she could not return to work for the remaining three weeks of the school year because the School District had hired a long-term substitute. In denying Grievant's request, the School District applied Article XVII, Section E(3) of the CBA, pertaining to childrearing leave,[3] rather than Article XVII, Section D(3) of the CBA, pertaining to childbearing leave.

The Association filed a grievance on behalf of Grievant, and the matter was heard by an arbitrator. Before the arbitrator, the Association argued that: (1) Grievant took childbearing leave under Section D; (2) under Section D(3), Grievant could return to work early in cases of an emergency; (3) Grievant had a financial emergency; and, (4) thus, the School District should have allowed Grievant to return to work early. The School District argued that: (1) the word "emergency" in Section D(3) refers to childbearing emergencies, i.e., complications from the birth, not fi-

---

3. Article XVII, Section E of the CBA provides, in pertinent part, as follows:

1. Employees of the [School District] may request and will be granted unpaid leave of absence of up to one (1) year for any one of the following reasons:

. . . .

b. Birth of a Child—Upon the birth of a child to an employee or the spouse of an employee, the employee may request a leave of absence for a period of up to one (1) year. Such leave may be set to coincide with the school term or semester term.

2. The above leaves shall be unpaid leaves ... except that the employee may request the fringe benefits be continued upon payment by the employee of the District's participation, if any, in such benefit.

3. **In the event the District employs a full-time substitute for the period of childrearing leave, the employee shall remain on leave for the full period of the leave.**

4. Upon return from childrearing leave, the teacher shall be returned to the position occupied at the time of commencement of leave, such position being the same assignment, grade level and building. If that position no longer exists, the teacher shall be given another position for which he/she is properly certified.

. . . .

6. In the event the pregnancy is terminated in miscarriage, or if the child is stillborn, or dies shortly after birth, the employee shall reserve the right to cancel childrearing leave on thirty (30) days' written notice.

7. A second year of unpaid leave may be granted at the sole discretion of the Board. (R.R. at 113–14) (emphasis added).

nancial emergencies;[4] and (2) if Grievant were allowed to return to work due to a financial emergency under Section D(3), which applies only to females, then the CBA would discriminate against males because they can only take childrearing leave under Section E, which does not permit them to return to work early any time the School District has hired a long-term substitute. The arbitrator accepted the Association's position and ordered Grievant made whole.[5]

The School District filed a petition to vacate the award with the trial court, which denied the petition. In doing so, the trial court rejected the School District's argument that the CBA discriminated against males by having separate and different provisions for childbearing and childrearing leave. The trial court explained that female teachers, after childbearing, are not similarly situated with male teachers on childrearing leave because the female teachers may choose to breastfeed their babies and may need to recover physically and emotionally from the childbirth. The School District now appeals to this court.

## I. Estoppel

As a threshold matter, the Association argues that the School District, having negotiated the terms in Article XVII, Section D of the CBA, is estopped from arguing that the arbitrator's award violates public policy against sex-based discrimination.[6] We agree.

The School District claims that the equitable doctrine of estoppel does not apply in administrative proceedings.[7] However, in *Fraternal Order of Police, E.B. Jermyn Lodge # 2 v. Hickey*, 499 Pa. 194, 199, 452 A.2d 1005, 1008 (1982), our supreme court held otherwise, stating:

[A] distinction must be drawn between situations where an arbitration panel attempts to mandate a governing body, over its objection, to carry out an illegal act and situations where the governmental unit employer attempts to belatedly avoid compliance with a term of a bargaining agreement it voluntarily agreed to during the bargaining process and thereby secure an unfair advantage in the bargaining process.

Our supreme court explained:

To permit a public employer to secure an advantage in the bargaining process

---

4. This construction of the provision is not logical. Section D(3) states that a teacher on childbearing leave may return to work only with a doctor's certification, and it then states that the teacher can return early in the event of an emergency. If the emergency is the development of complications relating to childbirth, the teacher would not be able to obtain certification from a doctor to return early. In fact, the teacher would not be seeking to return to work early. Rather, the teacher would be seeking to remain on childbearing leave for a longer period of time due to the complications.

5. The Association requested that Grievant be made whole by allowing her to return to work as of May 14, 2008, and receive any lost wages, benefits and healthcare costs resulting from the School District's refusal to return her to work. (R.R. at 30.)

6. The School District asserts that the Association waived this issue; however, this court may consider it in deciding whether to affirm the arbitrator's award on other grounds.

7. In making this argument, the School District cites *In re Churchill Area School District*, 30 Pa.Cmwlth. 413, 374 A.2d 1000 (1977), in which this court stated, in *dicta*, that the equitable doctrines of laches and estoppel do not apply in administrative proceedings. However, this court cited no authority for that proposition, referring only to *Pennsylvania Railroad Company v. Brownstein*, 182 Pa.Super. 65, 125 A.2d 618 (1956), which held that, because the statute of limitations applies in an assumpsit action, the equitable doctrine of laches does not apply.

by agreeing to a term and subsequently avoid compliance by belatedly asserting that term's illegality is equally inimical to the integrity of the bargaining process and undermines the harmonious relationship it was designed to foster....

"To permit an employer to enter into agreements and include terms ... which raise the expectations of those concerned, and then to subsequently refuse to abide by those provisions on the basis of ... [... the asserted illegality of the term] would invite discord and distrust and create an atmosphere wherein a harmonious relationship would virtually be impossible to maintain."

*Id.* at 198, 452 A.2d at 1007 (quoting *Pittsburgh Joint Collective Bargaining Committee v. City of Pittsburgh*, 481 Pa. 66, 74, 391 A.2d 1318, 1322 (1978)). The court emphasized that "[g]ood faith bargaining would require that questions as to the legality of the proposed terms of a collective bargaining agreement should be resolved by the parties to the agreement at the bargaining stage." *Id.* (quoting *Grottenthaler v. Pennsylvania State Police*, 488 Pa. 19, 25, 410 A.2d 806, 809 (1980)). "Obviously the statutorily mandated obligation to bargain in good faith is not met by permitting the government employer to avoid the performance of a term by questioning its legality after having received the advantages that flowed from the term's acceptance." *Id.* at 199, 452 A.2d at 1008.

Here, the arbitrator found that the provision for childbearing leave in Article XVII, Section D has been in existence since the 1977 agreement between the parties. (R.R. at 42.) In addition, the School District granted Grievant's request for childbearing leave, which specifically stated that Grievant might have financial needs that would require her early return to work. Thus, the School District recognized that the word "emergency" in Section D included a financial emergency. Because the School District bargained to allow female teachers to return early from childbearing leave in a financial emergency and never questioned its legality, the School District is estopped from arguing that such a provision is a violation of public policy against sex-based discrimination.

## II. Public Policy

■ Even if we were to conclude otherwise regarding the estoppel issue, we reject the School District's argument that the arbitrator's award requires that the School District violate the public policy against sex-based discrimination.[8]

The School District asserts that, under *Schafer v. Board of Public Education of the School District of Pittsburgh*, 903 F.2d 243 (3d Cir.1990), a school district discriminates against male teachers by denying them childrearing leave where childrearing leave is available to female teachers beyond the period during which they are actually physically disabled on account of their pregnancy, childbirth or related medical conditions. However, in this case, the arbitrator's award does not deny male teachers childrearing leave. In fact, this

---

8. In *Westmoreland Intermediate Unit #7 v. Westmoreland Intermediate Unit #7 Classroom Assistants Educational Support Personnel Association, PSEA/NEA*, 595 Pa. 648, 939 A.2d 855 (2007), our supreme court held that, upon appropriate challenge by a party, a court should not enforce a grievance arbitration award that contravenes public policy. The court added that such public policy must be well-defined, dominant and ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests. *Id.* There is a well-defined, dominant public policy against discrimination on the basis of sex expressed in Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–17, and in section 5(a) of the Pennsylvania Human Relations Act (PHRA), Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. § 955(a).

case has nothing to do with the availability of childrearing leave to male teachers. The arbitrator's award simply allows a female teacher to return early from childbearing leave due to a financial emergency under Section D(3). The award has no impact on male teachers who take childrearing leave under Section E. Indeed, the arbitrator's award has no discriminatory effect because it does **not** require that the School District deny a male teacher's request to return early from childrearing leave for financial reasons under Section E.

Accordingly, we affirm.

### ORDER

AND NOW, this 26th day of May, 2010, the order of the Court of Common Pleas of Allegheny County, dated September 17, 2009, is hereby affirmed.